THE STATE OF OHIO, APPELLEE, *v.* HAFLE, APPELLANT.

(No. 315—Decided May 4, 1977.)

*Mr. Gerald Simmons,* for appellee.
*Messrs. Kohnen & Kohnen, Mr. James Hunt* and *Mr. Armin Frank,* for appellant.

CRAWFORD, J. Defendant, the appellant herein, was charged with cruelty to animals in depriving cattle, sheep and a horse of necessary sustenance in violation of R. C. 959.13, on or about February 25, 1975. From a verdict of guilty and a sentence he has filed this appeal.

In May 1974, defendant and his wife removed their residence from Missouri to a twenty acre farm which they purchased in Clinton County, Ohio.

They brought from Missouri to Ohio some forty head of beef cattle, a horse and two sheep. Defendant testified that he marketed about 19 cattle, butchered 1, lost 3 from drowning in highwater and 1 from an accident in shipping.

On February 25, 1975, after having received a complaint from the neighborhood about defendant's neglect of his cattle, Herbert M. Conner, director of the Clinton County Humane Society, with Tom Swingly, a member of the society, called at defendant's farm, talked with him, and inspected the cattle and the premises.

Conner, with Swingly and perhaps another associate,

returned to the farm on February 26, again the same day, and again on February 28. Conner testified that the purpose of their visits had been to inspect the animals and to get the matter worked out, not to prosecute anyone. He stated that defendant said he would sell some of the cattle to a neighbor and take the rest to the stockyards, and that he would plan to do so on February 27.

Conner and Swingly testified that defendant said the price of cattle was down and that he was not going to put any more money into them. They stated that defendant said "Let them die," and he ultimately admitted that some 11 or 12 of the cattle had already died.

The cattle were still there on February 28, when, for the first time, defendant became hostile. On February 25 and 26 he had accompanied the visitors to the barn and had shown them the cattle and the premises.

On March 4, 1975, all the livestock, consisting of 8 cattle, the horse and 2 sheep, were removed from defendant's farm in accordance with an order prepared in the local solicitor's office. The state's evidence at the trial included the testimony of a number of neighboring farmers, who said that the cattle were weak and emaciated, and one or more had been compelled to remain out in the field.

Defendant contended that although he had had some difficulty with one batch of mouldy hay, and had experienced some problem in finding hay of good quality, he did acquire a sufficient quantity of such, and fed it and some pellets to his stock. There was conflict in the testimony as to the kind and amount of hay which he actually fed.

In explanation of the loss of the cattle and the emaciated and weakened condition of the survivors, defendant blamed, among other factors, the shipping (which occurred 9 months before), the difficulty of the cattle in adjusting to a new climate, the bad weather (although some were shut out of the barn), the difficulty he experienced obtaining good hay, and parasites.

Two veterinarians who had seen the cattle at one time or another, testified. Defendant's counsel attempted to elicit from them a statement that parasites caused the

malnutrition, but the substance of their expert testimony was that malnutrition more often occurred first thereby rendering the stock susceptible to parasites.

I. The first assignment of error concerns the overruling of defendant's motion to dismiss, timely made and renewed, based upon a claim of the unconstitutionality of R. C. 959.-13(A), under which he was charged.

The brief divides the argument of this assignment into six numbered issues.

1. The first issue thus raised is that the statute under which the defendant was charged is void for vagueness.

The charge was framed under R. C. 959.13(A), entitled "Cruelty to Animals." The section then read:

"No person shall overwork, overdrive, overload, or torture an animal, deprive one of necessary sustenance, unnecessarily or cruelly beat, needlessly multilate or kill, or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water. No person shall carry or convey an animal in a cruel or inhumane manner, nor keep cows or other animals in an enclosure without wholesome exercise and change of air, nor feed cows on food that produces impure or unwholesome milk, nor work or abandon to die an old, maimed, sick, infirm, or diseased animal. A person or corporation engaged in transporting livestock shall not detain such stock in railroad cars or compartments longer than twenty-eight hours after they are placed without supplying them with necessary food, water, and attention, nor permit such stock to be so crowded as to overlie, crush, wound, or kill each other."

The format of this section was changed, effective January 17, 1977, but it remains substantially the same as quoted here.

As authority for his argument that this statute is unconstitutional, defendant cites two cases arising under vagrancy and suspicious person ordinances.

The first of these cases in *Papachristou* v. *City of Jacksonville* (1972), 405 U. S. 156. The court at page 162 said of the vagrancy ordinance involved:

"This ordinance is void for vagueness, both in the sense that it 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' *United States* v. *Harriss,* 347 U. S. 612, 617, and because it encourages arbitrary and erratic arrests and convictions. *Thornhill* v. *Alabama,* 310 U. S. 88; *Herndon* v. *Lowry,* 301 U. S. 242."

The second case cited by defendant, which concerned a suspicious person ordinance, was *Palmer* v. *City of Euclid* (1971), 402 U. S. 544. The court, at page 545, said:

"We reverse the judgment against Palmer because the ordinance is so vague and lacking in ascertainable standards of guilt that, as applied to Palmer, it failed to give 'a person of ordinary intelligence fair notice that his contemplated conduct is forbidden * * *.' *United States* v. *Harriss,* 347 U. S. 612, 617 (1954)."

Plaintiff cited the following cases: *Commonwealth* v. *Curry* (1890), 150 Mass. 509; *Ames* v. *State* (1911), 11 Ohio N. P. (N. S.) 385; and *Mulhauser* v. *State* (1900), 1 Ohio C. C. (N. S.) 273.

In the first two of plaintiff's cases, the court found that the conduct of the defendant constituted cruelty to animals as forbidden by the statutes. In the third, the charge was framed under R. S. 6951, which was the predecessor of G. C. 13376 and R. C. 959.13(A). The particular language with which we are here concerned is substantially identical with that in the earlier version of the statute. With respect to this and to related statutes, the *Mulhauser* court said, at page 280:

"* * * [I]t was charged that these laws had been so carelessly and bunglingly framed as to render their meaning uncertain and their enforcement difficult. Upon a pretty careful examination of our statutes upon this subject, we are inclined to think that such criticism is unjust and that these laws were framed with reasonable certainty and can be enforced without any serious difficulty."

We concur in this view.

2. Defendant's second issue under his first assignment of error reads:

"Where, as applied in the instant cause, R. C. 959.13 (A) resulted in a conviction and sentence without proof beyond a reasonable doubt of mens res. [*sic*], scienter, and causation, it was an unconstitutional deprivation of the defendant-appellant's due process rights that he was so convicted solely on the basis of an irrebuttable presumption rooted in tautology, viz., that he was criminally guilty of depriving animals of necessary sustenance because some of the animals died, or appeared malnourished."

In support of this issue, defendant cites a 5 to 4 decision of the United States Supreme Court—*Lambert* v. *California* (1957), 355 U. S. 225. That case is substantially summarized in the headnote as follows:

"A Los Angeles municipal ordinance makes it an offense for a person who has been convicted of a crime punishable in California as a felony to remain in the City for more than five days without registering with the Chief of Police. On appeal from a conviction for failure to register, *held*: When applied to a person who has no actual knowledge of his duty to register, and where no showing is made of the probability of such knowledge, the ordinance violates the Due Process Clause of the Fourteenth Amendment."

This case was not considered proper authority upon which to reverse a conviction of a previously convicted felon for carrying a firearm while under a disability by our court in *State* v. *Drummonds*, unreported, No. C-74097, decided January 27, 1975.

The conduct of defendant Halfe, here, was not merely ignorantly passive, as in *Lambert*, but involved an act or neglect committed knowingly.

Mr. Justice Douglas, in the course of his opinion in *Lambert,* at page 228, made this comment which effectively disposes of one of defendant's repeated arguments:

"We do not go with Blackstone in saying that 'a vicious will' is necessary to constitute a crime, 4 Bl. Comm. *21, for conduct alone without regard to the intent of the doer is often sufficient. There is wide latitude in the lawmakers to declare an offense and to exclude elements of

knowledge and diligence from the definition. * * *''

3. It is contended that there was not ''proof beyond a reasonable doubt of 'mens res [*sic*], scienter and causation.' ''

The statute upon which defendant was convicted, R. C. 959.13(A), makes no mention of intent or the mental state of the accused.

R. C. 2901.21(B) provides:

''When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.'' R. C. 2901.22 defines ''recklessly'' as follows:

''(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.''

The state's evidence in this case is ample, if believed by the jury, to prove that the defendant acted recklessly in the care, or more accurately, in the neglect of his livestock.

4. Defendant complains that the humane society representatives made a warrantless search of his property.

The evidence is clear that on their first two trips to defendant's farm they were expressly permitted, even invited by defendant, to come upon his property and make observations. On their third trip, when apparently no further significant facts were obtained by their observation, they left when defendant insisted they do so. No arrest was made on any of these occasions, and according to the prosecuting witnesses no arrest was being contemplated.

The voluntariness of a consent to a search is a question of fact to be determined from the totality of the surrounding circumstances. *Schneckloth* v. *Bustamonte* (1973), 412 U. S. 218.

The evidence in this case indicates that the consent was voluntary and that the representatives desisted when consent was withdrawn.

5. Defendant maintains that the prosecution of this case by counsel in the employ of the Clinton County Humane Society violates the constitutional provision regarding authority to prosecute.

He cites Article IV, Section 20, of the Constitution with respect to authority to prosecute. That section provides in pertinent part that "* * * [A]ll prosecutions shall be carried on, in the name, and by the authority, of the State of Ohio * * *."

A cognate statute is R. C. 2931.18, entitled: "Humane society may employ attorneys." It begins:

"A humane society or its agent may employ an attorney, and may also employ one or more assistant attorneys to prosecute violations of law relating to:

"(A) Prevention of cruelty to animals or and children * * *."

The instant prosecution is carried on in the name of the state of Ohio, and by the authority of the state, as duly provided by the legislature in R. C. 2931.18. The language of the Constitution apparently contemplates some such legislative authority of the state; hence, the proceedings were entirely regular in this respect. Furthermore, defendant has not shown that he was prejudiced in any way.

6. Defendant contends that his animals were improperly and illegally taken from him.

It appears from the record that they were taken from his farm under the provisions of R. C. 1717.13. The local solicitor's office prepared a removal order and a prosecuting witness and the director of the humane society took the order to defendant's door and knocked, but no one answersheriff, they were all removed and the order was complied ed. In the presence of the director, the court bailiff, and the

with. There was no arrest, no warrant, and apparently no search. In fact, defendant was never arrested, but merely summoned into court.

R. C. 1717.13 purports to authorize the removal of animals under the conditions alleged by the state. However, we do not pass upon that question at this point, inasmuch as the propriety of the seizure has no bearing upon the question of defendant's rights as a criminal defendant.

Accordingly, the first assignment of error is overruled.

II. The second assignment of error reads:

"The trial court erred to the prejudice of the defendant-appellant by admitting into evidence hearsay testimony of statements made by the defendant-appellant during a custodial interrogation."

This obviously referred to the statements attributed to defendant that the price of cattle was down, that he was not going to put any more money in them, and that he would "Let them die."

His brief states:

"Where a private citizen, operating under that color of law which permits a humane society to bring criminal proceedings of violations under Chapter 959 Ohio Rev. Code, thereby subjects another citizen (defendant-appellant herein) to a custodial interrogation which elicits utterances prejudicial to the latter's interests, such utterance may not thereafter he recited in court to said individual's prejudice where he did not have the assistance of counsel at the time of the interrogation. See, *Argersinger* v. *Hamlin,* 407 U. S. 25 (1972); *Escobedo* v. *Illinois,* 378 U. S. 478 (1964); *State* v. *Pyle,* 19 Ohio St. 2d 64 (1969)."

In *State* v. *Pyle* (1969), 19 Ohio St. 2d 64, the Supreme Court of Ohio said:

"The holding of *Miranda* v. *Arizona,* 384 U. S. 436, is not applicable to misdemeanors, as presently defined in Ohio." (Paragraph two of the syllabus.)

Furthermore, this assignment of error is inapplicable, because there was no interrogation while defendant was under arrest and held by police officers, as was the case in *Miranda.* He was on his own farm, free from all restraint.

The director of the humane society did not assume authority to arrest him. In fact, as already noted, he was never arrested; he was only summoned to come into court. A complaint was not filed nor a summons issued until March 6, 1975. Therefore, no *Miranda* warning was required.

The other cases cited, pertaining to the right to counsel, are likewise inapplicable for the same reason, that defendant was at no time in the custody of police officers. He was on his own farm, free to come and go at his pleasure.

Therefore, any damaging statements made by defendant in the presence of the investigators must be held to have been voluntary, and not the result of restraint, and those who heard his statements may testify to them.

The second assignment is overruled.

III, and IV. The third and fourth assignments of error challenge the sufficiency of the evidence to sustain the conviction.

In our opinion, the evidence is not only adequate, but overwhelming. At the time of argument of this appeal, defendant's counsel requested permission to file a fifth assignment of error. Such permission was granted by the court, with the assent of counsel for the appellee. The court ordered briefs to be filed on the additional assignment.

That fifth assignment of error states:

"The trial court erred to the prejudice of defendant-appellant in failing, as a matter of law, to order the appellant discharged where his statutory right to speedy trial under R. C. 2945.71 et seq., was violated."

Defendant's statement of the facts, which is accepted as correct by plaintiff, reads as follows:

"The transcript of the docket and journal entries will show that summons on the complaint was served upon the defendant-appellant on March 6, 1976, with the cause set for hearing on March 17, 1976. Thereafter, an entry of March 17th shows that the case was continued to March 24th upon the request of the defendant-appellant. On March 24th, a plea of not guilty was entered with demand for jury, the cause being continued to April 25th. On April

25th, the Court's entry shows that the defendant-appellant, 'by his attorney * * * having moved for a dismissal upon the basis of the unconstitutionality of the statutes, the Court continued the case for filing of briefs and ruling upon motion of defendant * * *.' Trial commenced on July 24, 1975."

R. C. 2945.71(B) provides that:

"A person against whom a charge of misdemeanor * * * is pending in a court of record, shall be brought to trial: * * *

"(2) Within ninety days after his arrest or the service of summons, if the offense charged is a misdemeanor of the first or second degree, or other misdemeanor for which the maximum penalty is imprisonment for more than sixty days."

R. C. 2945.72, provides that:

"The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following: * * *

"(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused * * *

"(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than the accused's own motion."

One hundred and forty days elapsed between March 6, 1975, when the complaint was served upon the defendant, and July 24, 1975, the date of trial.

The period of 11 days between service on March 6 and the date set for hearing on March 17, and the 32 days between the plea of not guilty on March 24 and the trial date of April 25, 1975, are properly counted toward the permissible 90 days. The 7 days continuance from March 17 to March 24, requested by defendant, must be excluded.

The period of 90 days between defendant's motion on April 25 for a dismissal for unconstitutionality, and the date of the trial on July 24, 1975, comprise two parts. The first represents the continuance for filing briefs on defendant's motion, which must be excluded. R. C. 2945.72(E). Just how many days this involved is not stated. Plaintiff

claims that such briefs were never filed, but that on July 1 the court set the trial for July 24. This has not been disputed. Hence, the only logical conclusion is that the court allowed until July 1 (67 days from April 25) for briefs. The second part represents 23 days from July 1 until July 24.

Defendant must accept responsibility for the 67 day delay caused by his motion. *State* v. *Wentz* (1975), 49 Ohio App. 2d 96, 98. The remaining 23 days before trial are properly chargeable against the allowable 90 days. This makes 11, 32, and 23 days, or a total of 66 days elapsed against the allowable 90 days. The trial date of July 24 is well within that period.

There are other considerations which militate against this fifth assignment of error. Defendant did not raise this issue in the trial court. Hence, according to the general rule, it was waived. *State* v. *Lancaster* (1971), 25 Ohio St. 2d 83.

Had more than 90 days elapsed before trial, defendant would be confronted by the rule stated in *State* v. *Westbrock* (1975), 47 Ohio App. 2d 211, that:

"Where a case has been set for trial on a date beyond the period required by R. C. 2945.71 and the accused has ample notice thereof, he may not sit idly by and let the time within which he should be brought to trial expire in order to take advantage of the provisions of R. C. 2945.73." (Paragraph two of the syllabus.)

It was also held in *State* v. *Wentz, supra,* that:

"The time within which an accused must be brought to trial under R. C. 2945.71 is extended 'by any period of delay occasioned by the neglect of the accused' (R. C. 2945.72 H). Delay is occasioned by the neglect of an accused who fails to object to his trial assignment, announced within rule, for a trial date commencing after the time provided for trial in R. C. 2945.71." (Syllabus.)

We find no merit in this fifth assignment of error.

*Judgment affirmed.*

SHANNON, P. J., and KEEFE, J., concur.

CRAWFORD, J., retired, of the Second Appellate District, assigned to active duty in the First Appellate District under authority of Section 6(C), Article IV, Constitution.