**State**
**v.**
**Tiber**
*[Cite as 3 AOA 160]*

*Case No. 88-B-28*
*Belmont County, (7th)*
*Decided May 17, 1990*

*Frank Pierce, Prosecuting Attorney, Timothy D. Oakley, Asst. Prosecuting Attorney, 147-A West Main Street, St. Clairsville, Ohio 43950, for Plaintiff-Appellee.*

*Thomas A. Hampton, 160 East Main Street, Barnesville, Ohio 43713, for Defendant-Appellant.*

O'NEILL, P.J.
The defendant-appellant appeared for trial to a jury in the trial court charged with violation of R.C. 959.13(A)(1), which reads as follows:
"(A) No person shall:
"(1) Torture an animal, deprive one of necessary sustenance, unnecessarily or cruelly beat, needlessly mutilate or kill, or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water;"
Following trial, the jury returned a verdict finding the defendant-appellant guilty. A sentence and fine was imposed by the trial court and a timely notice of appeal was filed.
In his first assignment of error, the appellant contends that the trial court erred in refusing to grant his motion for acquittal following the state's presentation of its case.
Robert Lane was called as a witness by the state. Mr. Lane testified that on March 29th, in the afternoon, he was working in his backyard, which is approximately three doors from the backyard of the defendant-appellant. He went on to state that he suddenly heard a dog yelping and screaming. He said that he looked up and he saw the defendant, with a metal garden rake, just slamming down upon a dog as hard as he could. Mr. Lane stated that the dog was screaming. (Tr. 7).
"He was hitting the dog and the dog kept trying to go towards the church which was in the lot next to his." (Tr. 7).
Mr. Lane went on to state that the dog was moving, apparently attempting to get away from the defendant-appellant but "He was hitting the dog and the dog kept trying to go towards the church * * *." (Tr. 7). Mr. Lane went on to testify "Next as the dog left their yard and went to the church yard which is only a matter of probably - the whole area is probably ten feet. He put the rake down and got a shovel and took and put that

shovel as far as he could and slammed it down on the dog." (Tr. 8). Mr. Lane further testified that, after the defendant-appellant had finished beating the dog, he tied a noose on the dog.

"A piece of clothes line. He somehow tied it on the dog, drug the dog up through the yard and to the side of the garage, which I couldn't see. And shortly after he hosed it all down, he went down the alley. * * *." (Tr. 10).

Mr. Lane was asked whether the dog had the power of locomotion between the first and last blow which he witnessed. His response to that was "Evidently it had some because it had moved that far." (Tr. 20).

Andy Mistak, Jr. testified as a witness. Mr. Mistak testified that, on the afternoon in question, he stopped to visit the defendant-appellant relative to buying a rim for his automobile. Mr. Mistak stated that the defendant-appellant "*** He took me to the basement of the garage and there was a dog laying on the floor with rope on him and stuff and I saw his chest moving and I said it wasn't dead. So he struck it with a shovel and put it in a bucket and slid it through the back window of the garage. " (Tr. 22). Mr. Mistak went on to testify that the appellant told him "* * * not to say anything to the Gattens or Dawn Moore." (Tr. 22). Mr. Mistak asked the appellant why he had killed the dog. "He said something about barking and the church yard, something like that." (Tr. 22).

During recross-examination, Mr. Mistak was asked whether the appellant had ever told him that he killed the dog because it was bothering him. In response to this, Mr. Mistak stated:

"He said he was tired of it barking and carrying on, yelping, however you want it." (Tr. 27).

James W. Kessler, Chief of Police of Belmont, Ohio, was called as a witness. Mr. Kessler testified that he commenced an investigation relative to the killing of the dog and that, on the day after the incident, the defendant-appellant, sometime between midnight and 1:00 in the morning, took him out in the woods, approximately four miles from the appellant's house, and dug up the carcass of the dog.

Rule 29(A) of the rules of criminal procedure provides, as follows:

"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."

At the time of the appellant's motion for acquittal, there was no question but that the defendant-appellant had killed the animal in question. The remaining question was whether the appellant had unnecessarily or cruelly beat, or needlessly killed the dog. There had been evidence presented whereby the triers of the fact could have concluded that the defendant-appellant unnecessarily beat the dog because its barking had bothered him. There was further evidence that, after injuring the dog, the appellant needlessly killed it. In a circumstance such as this, if the original injury to the dog was accidental, it would be reasonable that a person would retrieve the injured animal and attempt to get help for it instead of pursuing the animal with a shovel and beating it.

It is our conclusion, upon a review of the evidence, that at the time of this motion there was sufficient evidence before the triers of the fact to sustain a conviction of the offense with which the appellant was charged.

The second assignment of error complains that the trial court erred in failing to grant the appellant's motion for acquittal on due process grounds based upon uncertainty and vagueness of the offense charged.

This question, relative to this statute, has received prior attention in the case of *State* v. *Hafle* (1977), 52 Ohio App. 2d 9, wherein the Court of Appeals for Clinton County, stated, in Syllabus One, as follows:

"R.C. 959.13, prohibiting cruelty to animals, gives fair notice that the conduct described is forbidden and such statute is not unconstitutional for vagueness."

The appellant states, under this assignment of error, that he was not on fair notice that the accidental wounding of an animal and its subsequent dispatch would result in a criminal conviction. The statute in question, by its very language, has no application to the accidental wounding of an animal. It very specifically uses the words unnecessary, cruelly and needlessness, none of which can be construed to have application to a situation involving an accident. Unnecessarily could easily be interpreted to mean without reason. To cruelly beat an animal certainly does not demand definition. The needless killing of an animal does not demand definition. Appellant goes on to argue that the jail term imposed for the crime charged was unreasonable

because it brands one a criminal, not on a showing of an intentional act but upon a finding of recklessness alone. "Recklessness alone", by definition, does not describe an innocent or ignorant person. R.C. 2901.22(C) provides:

"A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

We find this second assignment of error to be without merit.

The third assignment of error complains that the verdict in this case is against the manifest weight of the evidence.

Under this assignment of error, the appellant argues that, on his side of the case, he offered a reasonable explanation of how the death of the dog occurred. In support of this assignment of error, the appellant points out that, when he testified, it was his testimony that he swung the rake, which was in his hand, at the dog to scare the dog and not to injure the dog and that, in such process, he lost his balance and accidentally struck the dog's head causing the loud yelping and profused bleeding. The appellant points to the testimony of Mr. Mistak and goes on to argue that Mr. Mistak could not testify as to why the appellant had first struck and later killed the dog. This is an incorrect resume of the testimony by Mr. Mistak. Mr. Mistak very specifically testified that the appellant had killed the dog because the dog had been barking and bothering him (Tr. 22). The appellant goes on to argue that this court should seriously consider the credibility of the witness Mistak. Referring to the case of State v. Martin (1983), 20 Ohio App. 3d 173, the appellant points out that it is appropriate for this court to consider the credibility and accuracy of the witnesses. We have reviewed the Martin case and we agree that it is stated as a part of the dicta in that case that, where the issue of manifest weight of the evidence is involved, and appellate court may consider "* * * the credibility of witnesses * * *." We do not agree with this dicta. The Martin court, as authority for such conclusion, cited the case of State v. Petro (1947), 148 Ohio St. 473. The Supreme Court in the Petro case stated, at page 501:

"It is the minds of the jurors and not the minds of the judges of an appellate court that are to be convinced. The jurors see the witnesses and observe their demeanor. The credibility to be given to each and all of these witnesses and to part or all of their respective testimony is for the jury."

This third assignment of error is found to be without merit.

The trial court admitted, the over objections of the defendant-appellant, two photographs of the dead dog. During direct examination of Police Chief Kessler, he was shown state's exhibits number four and five which were identified by him as being photographs of the dog which the defendant-appellant exhumed from the grave where it had been buried. The appellant argues that there was no relevancy nor need established for the introduction of these photographs, the reason that there had already been sufficient evidence that the animal had been killed, and the further fact that the appellant offered to stipulate that he was the person who killed the animal. In response, the appellee argues that the photographs were introduced for the purpose of off-setting any contention that the appellant had accidentally killed the dog. All relevant evidence is admissible. This means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. The photographs in question very graphically display what are obvious serious head injuries to the dead dog and we do not conclude, from a review of all of the evidence, that the probative value of these photographs was substantially outweighed by the danger of unfair prejudice or of misleading the jury.

This fourth assignment of error is found to be without merit.

The appellant had requested that the trial judge instruct the jury as to the legal issue of accident in regards to the charge upon which he was being tried. This request was denied by the trial judge and is the substance of the appellant's fifth assignment of error.

Upon his side of the case, the appellant had developed, by way of testimony, the fact that he initially injured the dog accidentally without any purpose or intention. The evidence, as well as the law, governs the charge of the court in a criminal case. State v. Loudermill (1965), 2 Ohio St. 2d 79, 80. It is our opinion that, in view of the evidence as it was presented by the defendant-appellant, there should have been an instruction to the jury relative to the question of "accident." However, in considering error as to this refusal to give such

an instruction, we must consider the instruction by the trial judge as a whole. We find that the judge, very specifically, instructed the jury as follows:

"Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about March 29, 1988, and in Goshen Township, Belmont County, Ohio, the defendant did:

"(1) beat an animal cruelly or unnecessarily; or

"(2) needlessly kill an animal and that he did so recklessly."

"The term 'animal' includes every living dumb creature.

"The term 'cruelty' includes every act, omission, or neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is reasonable remedy or relief.

"A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." (Tr. 67-68).

It is presumed that the jurors listened to and heeded the instructions by the trial judge and certainly, based upon the foregoing portion of the judge's instruction, the jurors could easily reason that a defense to the charge would be proof by the defendant of accident. The phrases perversely disregards a heedless indifference speak of a requirement going well beyond an accident. Although this assignment of error has some merit, it is our conclusion that it is not of such weight as to justify a reversal of the judgment of the trial court.

The sixth assignment of error complains that prejudicial error arose in this trial because of the prosecutor's comments upon the appellant's exercise of his right to remain silent prior to trial. During cross-examination of the defendant-appellant, the following dialogue took place.:

"Pierce: You didn't tell anybody anything until today, Mr. Tiber?

"Tiber: No, I anin't (sic) been tellin' nobody what's happened to it or nothin'.

"Pierce: You didn't think it was anybody's business? Why didn't you tell?

"Tiber: The reason I ain't been tellin' anybody caus that day jimmy told me that he had told sister that it was her dog that was dead and after that, then Chico got hold of me next time I was home and he left me know the (sic) the Humane Society was wantin' it. And I figured well, I'll just keep my mouth shut now and give 'em the dog and if anything comes out of this, they can't say I was out spreadin' rumor or anything else." (Tr. 59).

As a part of his closing argument, the prosecutor stated to the jury:

"* * * The defendant, although claiming that the whole affair was an accident never told anybody anything about this accident until he told us his version of the events today. I submit to you that if he truly in his own mind believed that the whole affair was an accident, he would have said that right away. He wouldn't have waited until he knew that he was in severe legal difficulty." (Tr. 71).

In another part of his closing argument, the prosecutor brought out to the jurors that defense counsel, prior to trial, had the opportunity to talk to all the witnesses for the prosecution and the prosecutor thereafter specifically pointed out "I don't have the same luxury. I have to take the defendant just like you do. Whenever he decides to tell his story. And the luxury that we have in this case is that the defendant did tell his story and the story was not truthful." At that point there was an objection. An accused person has a constitutional right to stand silent prior to trial and the fact that defendant exercises this right should be no part of any comment or closing argument to a jury. Such comment can amount to egregious error. However, the impact of this error in this case wanes when we find that the prosecutor did, in part, in his closing argument make reference to the fact that the defendant had a right to remain silent.

"It's ok. It's the defendant's right. You don't have to say anything at all until he comes to court." (Tr. 82).

In conclusion, we find that it was error for the prosecution to make reference to this pretrial silence, but we do not find that it was prejudicial error.

The eighth assignment of error complains that the trial court imposed an excessive sentence upon the appellant.

The appellant was charged and found guilty of a violation of R.C. 959.13(A). R.C. 959.99 provides that:

"(D) Whoever violates division (A) of section 959.13 of the Revised Code is guilty of a misdemeanor of the second degree."

The term of imprisonment for a misdemeanor of the second degree shall be not more than ninety days (R.C. 2929.21). The trial court, following the jury verdict, initially imposed a sentence of 90 days. Subsequently, the trial judge modified this sentence to 60 days. The execution of the sentences imposed was at all times stayed.

R.C. 2929.22 sets forth a number of criteria a sentencing judge should consider in imposing sentence for a misdemeanor. R.C. 2929.22 reads as follows:

"(A)   In determining whether to impose imprisonment or a fine, or both, for misdemeanor, and in determining the term of imprisonment and the amount and method of payment of a fine, the court shall consider the risk that the offender will commit another offense and the need for protecting the public therefrom, the nature and circumstances of the offense, the history, character, and condition of the offender and his need for correctional or rehabilitative treatment, and the ability and resources of the offender and the nature of the burden that payment of a fine will impose on him.

"(B)  The following do not control the court's discretion, but shall be considered in favor of imposing imprisonment for misdemeanor:

"(1)  The offender is a repeat or dangerous offender;

"(2)  Regardless of whether or not the offender knew the age of the victim, the victim of the offense was sixty-five years of age or older or permanently and totally disabled at the time of the commission of the offense.

"(C)  The criteria listed in section 2929.12 of the Revised Code, favoring shorter terms of imprisonment for felony, do not control the court's discretion, but shall be considered against imposing imprisonment for misdemeanor.

"(D)  The criteria listed in divisions (B) and (C) of this section shall not be construed to limit the matters which may be considered in determining whether to impose imprisonment for misdemeanor.

"(E)  The court shall not impose a fine in addition to imprisonment for misdemeanor, unless a fine is specially adapted to deterrence of the offense or the correction of the offender, or the offense has proximately resulted in physical harm to the person or property of another, or the offense was committed for hire or for purpose of gain.

"(F)  The court shall not impose a fine or fines, which, in the aggregate and to the extent not suspended by the court, exceeds the amount which the offender is or will be able to pay by the method and within the time allowed without undue hardship to himself or his dependents, or will prevent him from making restitution or reparation to the victim of his offense.

"(G)  At the time of sentencing or as soon as possible after sentencing, the court shall notify the victim of the offense of his right to file an application for an award of reparations pursuant to sections 2743.51 to 2743.72 of the Revised Code."

Between imposition of the original sentence and modification thereof, the trial judge required that the defendant be evaluated by a Community Mental Health Services to determine if counseling was necessary. At the hearing, upon the court's reconsideration of sentence, the trial judge, after hearing statements by the prosecution and the defendant, very specifically stated that he had given considerations to the factors set forth in R.C. 2929.22 and found that, upon a review of those factors, there was a basis for a modification of the original sentence.

It is our conclusion that the trial judge complied with the requirements of R.C. 2929.22.

We are further moved to find this eighth assignment of error to be without merit by the case of *Toledo* v. *Reasonover* (1965), 5 Ohio, St. 2d 22, Syllabus 1, which states:

"The Court of Appeals cannot hold that a trial court abused its discretion by imposing too severe a sentence on a defendant convicted of violating an ordinance, where the sentence imposed is within the limits authorized by the applicable ordinance and statutes and there is nothing in the record to indicate whether defendant had a past criminal record or what his driving record was or that the trial court in sentencing defendant did not consider any such past records." See also *State* v. *Coyle* (1984), 14 Ohio App. 3d. 1985.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

COX, J., and GWIN, J., concur.