DECISION AND JOURNAL ENTRY
Appellants Tom Donnelly, Vincent Donnelly, Rosalie Donnelly and Aramore Acres, Inc. have appealed from a judgment of the Summit County Common Pleas Court that granted summary judgment against them on seven of their eight claims. This Court affirms in part, reverses in part and remands this cause for further proceedings.
 I.
On January 22, 1994, in response to a complaint that dead horses had been seen on Appellants' property, Janet Lamar, an investigator for the Humane Society of Greater Akron ("Humane Society"), visited Aramore Acres.[1] Ms. Lamer was unable to locate the dead animals. Two days later, the Richfield Police Department received another report that dead horses were visible on Aramore Acres from a rest stop on Interstate-271. After the Richfield Police and representatives from the Humane Society observed these animals from the rest stop, they went to Aramore Acres and confronted Tom Donnelly. That same day, the Humane Society representatives were interviewed by Carl Monday of WJW TV, Fox 8, based in Cleveland, Ohio. Mr. Monday's report aired on Fox 8 News on January 26, 1994. In the end, four dead horses were discovered on Aramore Acres.
On January 31, 1994, a search warrant was issued by the Akron Municipal Court, which allowed the police and Humane Society representatives to search the farm. The warrant was executed and four horses were seized.[2] As a result of this investigation, Tom Donnelly was charged, tried and convicted of cruelty to animals. The Akron Municipal Court ultimately ordered the four horses returned to the Donnellys.
On January 22, 1997, Appellants filed a complaint against Appellees Betty Zekan, Zekan Arabians, Kristen Cusac and David Cusac (collectively referred to as "Zekan Appellees"), asserting causes of action for: (1) abuse of process; (2) invasion of privacy; (3) conversion; and (4) violations of Section 1983, Title 42, U.S. Code. Appellants also named Appellees the Humane Society, Dr. James Noonan, D.V.M., Vicki Schlessner, Donald Schlessner, Richard Hirt and Ken Odom (collectively referred to as "Humane Society Appellees"), advancing claims which included those raised against the Zekan Appellees, listed supra, as well as claims for: (5) intentional infliction of emotional distress; (6) defamation; (7) false imprisonment; and (8) negligence.
According to Appellants, Betty Zekan orchestrated the Humane Society's investigation of Aramore Acres, the subsequent seizure of Appellants' horses and the prosecution of Tom Donnelly, in order to reacquire Silfawna, a mare that Betty Zekan had previously sold to the Donnelly family. They further alleged that in the process, the Zekan and Humane Society Appellees invaded their privacy by casting Appellants in a false light, defamed them and violated their constitutional rights.
On March 16, 1999, the trial court granted summary judgment in favor of the Zekan Appellees on each of the four counts asserted against them and to the Humane Society Appellees on all but one of the claims advanced against them.[3] The trial court also certified its decision pursuant to Civ.R. 54(B), finding no just reason for delay. Appellants timely appealed, asserting two assignments of error.[4] Because Appellants' assignments of error are interrelated and for ease of discussion, they will be consolidated and resolved together.[5]
Appellants have essentially argued that the trial court erred when it granted summary judgment in favor of the Zekan and Humane Society Appellees on seven of their eight counts. This Court will first set forth the appropriate standard of review and then address each relevant cause of action in turn.
 II. A. Summary Judgment Standard
This Court observes that upon a motion for summary judgment pursuant to Civ.R. 56(C), where a party seeks summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The Dresher court continued,
 The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
(Emphasis sic) Id. The court then went on to limit the third paragraph of the syllabus of Wing v. Anchor Media, Ltd. ofTexas (1991), 59 Ohio St.3d 108, to conform to the above requirements. Dresher, 75 Ohio St.3d at 295.
These principles were reaffirmed in Vahila v. Hall (1997),77 Ohio St.3d 421, 430:
 As explained in Mitseff (and more recently in Dresher), bare allegations by the moving party are simply not enough. The party seeking summary judgment always bears the initial responsibility of [1] informing the court of the basis for the motion and [2] identifying those portions of the record which support his or her claim. Then, and only then, is the initial burden discharged, requiring the nonmoving party to comply with Civ.R. 56(E).
(Emphasis sic.) Thus, it is apparent that unless the movant fulfills both prongs of the Dresher duty, the motion for summary judgment must be denied. The moving party is required to state the basis for his or her motion and then point to "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any," that support the motion. Civ.R. 56(C). Merely alleging that a nonmoving party lacks evidence does not satisfy this obligation. Unless and until that burden is met, the nonmovant is under no corresponding duty, and the motion must be denied. "[A] movant's conclusory assertions of no evidence against the nonmovant [are] no longer good enough in Ohio." Am. ExpressTravel Related Serv. Co., Inc. v. Mandilakis (1996), 111 Ohio App.3d 160,164. Further, assuming the movant satisfies his or her burden, the nonmovant is then permitted to present or point out evidence that satisfies the reciprocal burden to demonstrate the existence of a material factual dispute.
In reviewing a trial court's ruling on a motion for summary judgment, this Court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829. Because the propriety of a trial court's decision granting summary judgment is a matter of law, Lorain Cty. Bd. of Commrs. v. United States FireIns. Co. (1992), 81 Ohio App.3d 263, 267, an appellate court reviews the matter de novo.
 B. Abuse of Process
The tort of abuse of process has developed for cases in which a "legal procedure has been set in motion in the proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed." Yaklevich v. Kemp, Schaeffer Rowe Co., L.P.A.
(1994), 68 Ohio St.3d 294, 297, quoting Prosser Keeton, The Law of Torts (5 Ed. 1984) 897, Section 121. Essentially, Ohio courts will provide redress to an individual when another initiates and uses either a criminal or civil proceeding, which in form is proper, as a threat or club in order to obtain some other collateral advantage which might be otherwise unavailable. Robbv. Chagrin Lagoons Yacht Club, Inc. (1996), 75 Ohio St.3d 264,271. In order to establish an abuse of process claim, a claimant must establish each of the following:
 (1) that a legal proceeding has been set in motion in proper form and with probable cause;
 (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and
 (3) that direct damage has resulted from the wrongful use of process.
Yaklevich, 68 Ohio St.3d at paragraph one of the syllabus. Because Appellants have failed to satisfy their burden underDresher as to the second element of the Yaklevich test, this Court holds that the trial court's order entering summary judgment was proper.[6]
In support of their motion for summary judgment, the Zekan and Humane Society Appellees have argued that Appellants had no personal knowledge of any joint scheme to advance Tom Donnelly's prosecution for the benefit of Betty Zekan and that the record is devoid of any evidence to the contrary. The Zekan and Humane Society Appellees have directed this Court's attention to the affidavits of Rick Hirt, Vicki Schlessner, Ken Odom, Janet Lamar and Diane Beacham Sumrak, wherein each affiant averred that neither Betty Zekan nor the Cusacs had any involvement with Tom Donnelly's prosecution. They have further supported their position with the deposition testimony of Tom Donnelly, Vincent Donnelly and Rosalie Donnelly, wherein each conceded lack of any personal knowledge of the Zekan Appellees' involvement.
In response, Appellants offered evidence that Betty Zekan desired to reacquire Silfawna and that others were also aware of this fact. They also directed this Court's attention to the fact that the testimony of Vicki Schlessner and Diane Beacham created a discrepancy surrounding the time period in which Silfawna was boarded at the Zekan farm, and that the horse was identified under a different name during such time. Nevertheless, in order to satisfy their burden under Dresher as non-movants, Appellants should have produced evidence that Tom Donnelly was prosecuted at the Zekan Appellees' instruction, that the Zekan Appellees knew about the prosecution prior to its initiation or that a joint scheme was underway to deprive Appellants of their horses. The evidence produced by Appellants only contributes to speculation and amounts to nothing more than a complex web of supposition. Because Appellants did not produce any affirmative evidence that the Zekan and Humane Society Appellees were jointly responsible or conspired to set in motion and pursue the prosecution of Tom Donnelly for the collateral benefit of the Zekan Appellees, Appellants' abuse of process claim must fail. Accordingly, the trial court properly granted summary judgment in favor of the Zekan and Humane Society Appellees on this claim.
 C. Invasion of Privacy
In their complaint, Appellants alleged that the actions of the Zekan and Humane Society Appellees were calculated to portray Appellants "in a false light to the public and cause shame and embarrassment to their reputation."[7] Clearly, Appellants intended to advance under the false light tort of invasion of privacy, and any other interpretation would run contrary to the plain language of Appellants' complaint. Notwithstanding, Ohio does not recognize such a tort. Bertsch v. Communications Workersof Am., Local 4302 (1995), 101 Ohio App.3d 186, 192. As such, the trial court properly granted summary judgment in favor of the Zekan and Humane Society Appellees on this claim.
 D. Conversion
Appellants have alleged that the Zekan and Humane Society Appellees converted property by orchestrating the allegedly illegal seizure and carting away of the Donnelly's four horses. This Court has previously held that "conversion is any exercise of dominion or control wrongfully exerted over the personal property of another in denial of, or under a claim inconsistent with, his rights." Wozniak v. Wozniak (1993), 90 Ohio App.3d 400, 412. However, Ohio law sets forth certain circumstances where the government and those individuals acting under color of law enjoy a privilege to act, and thus, will not be liable for conversion. Specifically, an individual is privileged to commit acts which would otherwise be conversion when he or she acts pursuant to a court order which is valid or fair on its face. Penrod v.Prosecuting Attorney of Scioto Cty. (Apr. 4, 1990), Scioto App. Nos. 1771 and 1818, unreported, 1990 Ohio App. LEXIS 1403, at *9-10, quoting 1 Restatement of the Law 2d, Torts (1965) 501, Section 266. Indeed, if one acts pursuant to a facially valid search warrant, he or she should be able to rely upon that judgment without concern of being sued for conversion. Id. at *12. "At the time the judgment is initially rendered, a party must be able to rely upon it as a valid judgment, or the judgment would have no meaning at all." Id.
In the case at bar, the evidence shows that Betty Zekan, Vicki Schlessner and the Humane Society simply boarded a few horses that had been seized by the Humane Society Appellees pursuant to a facially valid search warrant.[8] As such, this Court need not inquire further. The trial court properly granted summary judgment in favor of the Zekan and Humane Society Appellees on Appellants' claim for conversion.
 E. Section 1983, Title 42, U.S. Code
In their complaint, Appellants also alleged that the Humane Society, Mr. Hirt, Dr. Noonan and Ken Odom, along with the Zekan Appellees, acting under color of law, operated as joint actors to deprive Appellants of their Fourth and Fourteenth Amendment rights under the United States Constitution.[9] Section 1983, Title 42, U.S. Code ("Section 1983") provides a remedy to persons whose federal rights have been violated by government officials. It is limited, however, to deprivations of federal constitutional or statutory rights. State ex rel. Carter v. Schotten (1994),70 Ohio St.3d 89, 92. To recover under Section 1983, a claimant must establish (1) that the conduct complained of was committed by a person acting under the color of law, (2) that the conduct deprived him or her of a federally protected right, and (3) that the deprivation occurred without due process of law. Chatman v.Slagle (C.A.6, 1997), 107 F.3d 380, 384.
Turning first to the Section 1983 claims against the Zekan Appellees, this Court concludes that the trial court properly determined that Betty Zekan, Zekan Arabians, Kristen Cusac and David Cusac were entitled to summary judgment. Pursuant to the Sixth Circuit Court of Appeals decision in Collyer v. Darling
(C.A.6, 1996), 98 F.3d 211, 232, because the Zekan Appellees were private individuals and entities, liability under Section 1983 will not attach unless Appellants prove that the Zekan Appellees willfully undertook wrongful conduct together with a state actor, conspired with a state actor or jointly participated with a state actor in that wrongful conduct. As support for their motion for summary judgment, the Zekan Appellees have directed this Court's attention to the affidavits of Betty Zekan, Kristen Cusac, David Cusac, wherein each averred that Betty Zekan boarded Silfawna only because the Humane Society requested her assistance after the horses had been seized. They have further supported their argument with the depositions of Tom Donnelly, Vincent Donnelly and Rosalie Donnelly, wherein each stated they had no personal knowledge of the Zekan Appellees' participation in the Humane Society's seizure.
In response, Appellants have pointed to the affidavits of Cheryl Sperie and Doris Robertson and the deposition of Dr. Noonan, wherein each state that Mr. Hirt had informed them that he had determined, prior to January 31, 1994, that four horses were to be seized from Aramore Acres. Appellants also have argued that Vicki Schlessner's knowledge, statements and business relationship affirmatively link the Zekan Appellees with the Human Society's seizure on January 31, 1994. As a matter of law, such evidence does not present a genuine issue of material fact as to whether the Zekan Appellees conspired, moved in concert or acted under color of law with the Humane Society Appellees. Accordingly, Appellants' arguments as to their Section 1983 claims against the Zekan Appellees are without merit, and summary judgment was proper.
With regard to the Humane Society, Mr. Hirt, Dr. Noonan and Ken Odom, Appellants have argued that the trial court erred as a matter of law when it determined that the Humane Society was a private entity and, therefore, not subject to Section 1983 liability. In short, Appellants have suggested that the Humane Society, while being a private entity, may still be considered "acting under color of law" when seizing one's person and property. This Court agrees.
First, the First District Court of Appeals has held that the prosecution of animal cruelty crimes initiated and advanced by a humane society are "carried on, in the name, and by the authority, of the State of Ohio." State v. Hafle (1977), 52 Ohio App.2d 9,15. See, also, 1996 Ohio Atty.Gen.Ops. No. 049, at 422 to 423. Second, as noted previously, Appellants have alleged a violation of their Fourth and Fourteenth Amendment rights under the United States Constitution, in that the Humane Society, Mr. Hirt, Dr. Noonan and Ken Odom searched his home and other property and detained them therein without the proper service of a warrant. The Eleventh District Court of Appeals has stated that theFourth Amendment applies to searches and seizures by Humane Society officers. State v. Durch (1984), 17 Ohio App.3d 262, 263, citingState v. Osborn (1980), 63 Ohio Misc. 17, 21. In light of the foregoing, this Court concludes that when the Humane Society and its representatives detained Tom Donnelly, searched his home and seized his horses, they were acting under color of law. Therefore, the trial court's grant of summary judgment on Appellants' Fourth and Fourteenth Amendment Section 1983 claims to the Humane Society, Mr. Hirt, Dr. Noonan and Ken Odom was improper.
 F. Intentional Infliction of Emotional Distress
In their complaint, Appellants alleged that the actions of the Humane Society Appellees were extreme and outrageous, intentional and done with the intent of creating serious emotional distress. The trial court held that the Humane Society Appellees were entitled to summary judgment on this claim. However, Appellants have failed assign or argue any error on appeal with respect to these allegations. Pursuant to App.R. 12(A)(1)(b), they, therefore, have conceded the correctness of the trial court's ruling on this issue.
 G. Defamation
Count V of Appellants' complaint alleged that Appellees Vicki Schlessner and Donald Schlessner made false statements and showed photographs to third persons indicating that Appellants had mistreated their horses. These communications, therefore, allegedly caused Appellants damage in the "horse show community."
To prevail on a claim for defamation, a claimant who is a private person must prove five elements: (1) a false and defamatory statement; (2) about claimant; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) that was either defamatoryper se or caused special harm to the claimant. Gosden v. Louis
(1996), 116 Ohio App.3d 195, 206.
Vicki and Donald Schlessner, in support of their motions for summary judgment, argued that the statements made to Carl Monday and others regarding the condition of Appellants' horses were, in fact, true.[10] These conclusions were established at Tom Donnelly's criminal trial. The Schlessners also asserted that the animals depicted in the pictures were truly Appellants' horses. Tom Donnelly tacitly conceded this point in Carl Monday's report. Appellants never responded to these points and have essentially relied upon mere allegations to create an issue of fact. As such, Appellants have failed to meet their reciprocal burden underDresher; therefore, summary judgment in favor of the Schlessners on Appellants' claim for defamation was proper.
 H. False Imprisonment
To be liable for false imprisonment one must have intentionally confined the claimant within a limited area, for any appreciable time, without lawful privilege or consent. Witcher v.Fairlawn (1996), 113 Ohio App.3d 214, 217. "Confinement consists of a `total detention or restraint upon [one's] freedom of locomotion, imposed by force or threats.'" Id, quoting Felicianov. Kreiger (1977), 50 Ohio St.2d 69, 71. However, as three of the appellees, namely the Humane Society, Mr. Hirt and Mr. Odom, have aptly pointed out, a guilty finding in a criminal proceeding, whether by trial or plea, is an absolute defense to an action for false imprisonment. Courtney v. Rice (1988), 46 Ohio App. 133, [46 Ohio App.3d 133],137.
Appellants alleged that the Humane Society, Mr. Hirt and Mr. Odom intentionally confined Tom Donnelly to his home for five or six hours, while not under proper arrest. Assuming, without deciding, that Appellants could sustain their burden underWitcher, this Court nevertheless concludes that the trial court properly barred Appellants' claim for false imprisonment because Tom Donnelly was found guilty of cruelty to animals resulting from the same circumstances giving rise to his confinement. Appellants' arguments as to false imprisonment are without merit. The trial court properly entered summary judgment in favor the Humane Society, Mr. Hirt and Mr. Odom on this claim.
 I. Negligence
Finally, Appellants have challenged the grant of summary judgment in favor of Mr. Hirt, the acting Executive Director of the Humane Society at the time the horses were seized. Specifically, Appellants have contended that that Mr. Hirt was directly responsible for the boarding of Bella Rhia and for her impregnation by another horse at the Humane Society. They have further argued that Mr. Hirt failed to meet his burden as a movant under Dresher. This Court agrees.
After a review of his appellate brief, it becomes apparent that Mr. Hirt misread the trial court's order and, thus, claimed that this cause of action remains pending at the trial court. On the contrary, the court below granted summary judgment to Mr. Hirt, finding that Appellants had failed to present any evidence of negligence. While the trial court accurately determined that Appellants did not produce any evidence of negligence, it overlooked the lack of evidence produced by Mr. Hirt. In his motion for summary judgment, Mr. Hirt merely asserted that Appellants had no evidence to support a claim for negligence. He failed to attach any affidavit or other evidence in support of such statements. Such unilateral declarations do not satisfy a movant's burden under Dresher. Mandilakis,111 Ohio App.3d at 164. Therefore, Appellants' argument as to their claim for negligence against Mr. Hirt has merit, and the trial court improperly granted summary judgment to him on Appellants' negligence claim.
 III.
The judgment of the trial court is affirmed in part and reversed in part. Appellants' Fourth and Fourteenth Amendment Section 1983 claims against the Humane Society, Mr. Hirt, Dr. Noonan, and Mr. Odom and the negligence claims against the Humane Society, Mr. Hirt and Dr. Noonan remain pending. The trial court's grant of summary judgment on all other claims was proper. The matter is remanded for further proceedings consistent with this decision.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
 ___________________________ BETH WHITMORE
FOR THE COURT SLABY, P.J., BATCHELDER, J. CONCUR.
[1] Aramore Acres is Tom Donnelly's farm. Rosalie and Vincent Donnelly are Tom Donnelly's parents.
[2] The four horses were: Bella Rhia, Silfawna, Petaska and Prince Charming. Bella Rhia and Petaska were taken and housed at the Humane Society. Silfawna was taken to Appellee Betty Zekan's farm, and Prince Charming was taken to Appellee Vicki Schlessner's farm.
[3] In Count VII of their complaint, Appellants alleged that the Humane Society, Mr. Hirt and Dr. Noonan negligently cared for the horses, because one horse became pregnant while in the Humane Society's custody. The trial court granted summary judgment in favor of Mr. Hirt on the negligence claim against him but denied summary judgment against the Humane Society and Dr. Noonan, finding genuine issues of material fact.
[4] After the parties had submitted briefs and presented oral arguments, on December 23, 1999, Appellee Betty Zekan died. Mr. Karl Hay, executor of her estate, was subsequently substituted in her stead, and the parties briefed the issue of whether certain claims against Zekan survived her death. Nevertheless, this Court declines to address these issues as they are rendered moot upon final disposition of the merits.
[5] For their first assignment of error, Appellants have stated,
 The trial court erred to the prejudice of [Appellants] in granting Summary Judgment to [Appellees], on each claim so granted, in view of evidence in the record raising genuine issues of material fact which precluded Summary Judgment as a matter of law.
For their second assignment of error, Appellants have asserted,
The trial court erred to the prejudice of [Appellants] in granting Summary Judgment to [Appellees] Humane Society of Greater Akron, Dr. Noonan, Mr. Hirt, Mr. Odom, Ms. Schlessner, and Mr. Schlessner, in view of the failure of these six [Appellees] to meet their burden as movants for summary judgment, set forth in Dresher v. Burt (1996), 75 Ohio St.3d 280 and Vahila v. Hall
(1997), 77 Ohio St.3d 421.
[6] As such, this Court need not reach the parties' arguments on the first and third elements.
[7] This claim is set forth in Appellants' complaint in Count II, paragraph sixty-five and under the title "Invasion of Privacy."
[8] As discussed infra, Appellants have argued that the search warrant was not immediately served on Tom Donnelly. Nevertheless, each party charged with conversion was relying on a search warrant that had been executed around 2:00 p.m. on January 31, 1994. Their reliance is central to this Court's disposition, and as such, the warrant's time of service upon Tom Donnelly becomes irrelevant in this context.
[9] This Court notes that Appellants have also suggested a violation of their First Amendment rights in their laundry list of claims. A review of their complaint reveals, however, that it is void of any specific factual allegations supporting such a claim. In fact, Appellants failed to even broach the issue on appeal. As a result, judgment in favor of the Zekan and Humane Society Appellees on that portion of Appellants' Section 1983 claim was appropriate.
[10] This Court would note that the Schlessners did advance other arguments. This Court declines to address them pursuant to App.R. 12(A)(1)(c).