AMERICAN EXPRESS TRAVEL RELATED SERVICES
COMPANY, INC. et al., Appellants,

v.

MANDILAKIS et al.; Scanlon, Appellee.

[Cite as *Am. Express Travel Related Serv. Co., Inc.
v. Mandilakis* (1996), 111 Ohio App.3d 160.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68783.

Decided May 20, 1996.

*Weston, Hurd, Fallon, Paisley & Howley, Jerome W. Cook* and *William H. Baughman,* for appellants.

*Steven G. Janik,* for appellee.

PATRICIA ANN BLACKMON, Judge.

The issue before us is whether American Express Travel Related Services Company, Inc. and First Data Corporation ("AMEX" and "First Data"), plaintiffs-appellants, have a cause of action against Thomas J. Scanlon, defendant-appellee, a lawyer whose client, Michael A. Mandilakis, embezzled $2,613,574.35 from them. They assert generally that the Ohio Code of Professional Responsibility is relevant to a lawyer's substandard conduct for purposes of civil liability; consequently, DR 7–102(B)(1) may be the basis for civil liability in this action. To support this premise, they argue that because the Ohio Supreme Court failed to specifically preamble DR 7–102(B)(1) with a no-liability provision, it reticently sanctioned civil liability on this basis. Thus, they conclude that Scanlon was Mandilakis's lawyer, he knew of the embezzlement, he failed to disclose it to AMEX and First Data as mandated by DR 7–102(B)(1), and, thus, he is liable.

Scanlon, on the other hand, asserts that AMEX and First Data's premise of liability is invalid. He argues that to establish negligence against a lawyer, there must be malpractice, fraud, privity, or maliciousness. In this case, Scanlon argues, none of these actions exist, thus making this case ripe for summary judgment. The trial court agreed and granted summary judgment. AMEX and First Data appeal and assign the following error:

"The trial court committed reversible error by granting defendant Thomas J. Scanlon's motion for summary judgment because the deposition testimony of defendant Michael A. Mandilakis, and other documentary support attached to American Express' opposition brief, directly contradicted attorney Scanlon's affidavit, the sole documentary support attached to his motion for summary judgment, thereby establishing genuine issues of material fact as to whether attorney Scanlon had knowledge for almost three years of his client's continuing embezzlement against American Express."

After reviewing the record and the arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.

On August 3, 1992, AMEX and First Data filed a complaint against Michael Mandilakis and Danielle Hacker for unjust enrichment and conversion. According to the complaint, Hacker, a former AMEX and First Data employee, conspired with Mandilakis to embezzle $2,613,574.35 over a three-and-one-half-year period. According to the complaint, Hacker was employed as a collector. Her job was to process requests by AMEX's money order agents for reimbursement of funds they advanced to pay AMEX money orders. Hacker was to gather supporting documents for such requests then issue checks to the agents.

From November 22, 1988 until June 26, 1992, Hacker submitted illegitimate check requests to AMEX and First Data, which falsely indicated that Mandilak-

is [1] was entitled to reimbursement for overpayment on American Express traveler's checks. As a result of the requests, AMEX and First Data issued more than $2,613,574.35 in checks payable to Mandilakis and/or his aliases. These checks were allegedly received and negotiated by Mandilakis who then converted the funds to his own use.

The complaint sought recovery of the amount embezzled, punitive damages, attachment of Mandilakis's property as well as any money or credits he had on deposit in any of several named banks, imposition of a constructive trust for the benefit of AMEX and First Data, and an injunction prohibiting Mandilakis from transferring, withdrawing or otherwise disposing of the funds or any real or personal property purchased with the embezzled funds.

On March 10, 1994, AMEX and First Data filed their second amended complaint adding Mandilakis's wife, Sylvia, as a defendant. The complaint also added several additional defendants including Mandilakis's attorney, Thomas Scanlon, and his firm, Donahue & Scanlon.[2] The complaint alleged, in late 1988 or early 1989, Mandilakis told Scanlon that he was involved in an embezzlement scheme against AMEX and First Data. According to the complaint, DR 7–102(B)(1) imposed a duty upon Scanlon to ask Mandilakis to stop the scheme and, if unsuccessful, to notify AMEX and First Data about the embezzlement.

DR 7–102(B)(1) provides as follows:

"A lawyer who receives information clearly establishing that [h]is client has, in the course of the representation, perpetrated a fraud upon a person or tribunal, shall promptly call upon his client to rectify the same, and if his client refuses or is unable to do so, he shall reveal the fraud to the affected person or tribunal."

Scanlon moved for dismissal of the complaint, arguing that Ohio's Code of Professional Responsibility could not be used to define a standard of care in tort actions. The motion was denied on June 2, 1994.

Thereafter, Scanlon filed a motion for summary judgment and for a protective order on October 11, 1994. After some additional discovery, the motion was granted on March 13, 1995. On March 23, 1995, the trial court certified the summary judgment as a final appealable order. This appeal followed.

■ The standard of review for an appeal from summary judgment is plenary. This court applies the same test as the trial court, which is set forth in Civ.R. 56, and we evaluate the record according to Civ.R. 56. Civ.R. 56 specifically provides

---

1. The requests were often issued on behalf of one of more than two dozen aliases used by Mandilakis.

2. The action was dismissed as against Donahue & Scanlon on June 2, 1994. Sylvia Mandilakis was dismissed as a defendant on January 10, 1995.

before summary judgment may be granted it must be determined that "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

Moreover, it is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1987), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. Doubts must be resolved in favor of the nonmovant. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138, 140. Under Civ.R. 56(E) "a nonmovant may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515.

■ In outlining what the nonmovant must do, the Ohio Supreme Court has held that a motion for summary judgment forces the nonmovant to produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. Recently, the Supreme Court limited *Wing*'s scope and held that both the movant and the nonmovant have burdens under Civ.R. 56(C), and it went further to outline the consequences of failure to sustain that burden by both parties. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 295, 662 N.E.2d 264, 275. Consequently, a movant's conclusory assertions of no evidence against the nonmovant is no longer good enough in Ohio. *Id.*

In view of the law on summary judgment, the issue before us is whether AMEX and First Data have a cause of action against Scanlon for negligence under either DR 7–102(B)(1) or legal malpractice. We conclude that they have no cause of action under either theory.

■ Historically, an attorney's negligence has been measured under the theory of legal malpractice. Legal malpractice requires (1) an attorney-client relationship giving rise to a duty, (2) breach of that duty, and (3) damages caused by the breach. *David v. Schwarzwald, Robiner, Wolf & Rock* (1992), 79 Ohio App.3d 786, 797–798, 607 N.E.2d 1173, 1179–1181. In this case AMEX and First Data have not shown the first prong, a duty arising from an attorney-client

relationship. In fact, they admit that there is no relationship. Consequently, no legal malpractice exists as a theory for civil liability in this case.

■ As a general rule, an attorney is liable to his client alone, not to third parties, for negligence in the conduct of his professional duties. *Stoll v. Kennedy* (1987), 38 Ohio App.3d 102, 526 N.E.2d 821. AMEX and First Data cite several cases which hold that an attorney may be liable to a third party for negligence in connection with his representation of a client. See, *e.g., Solon Family Physicians, Inc. v. Buckles* (1994), 96 Ohio App.3d 460, 645 N.E.2d 150. However, Ohio courts have held that such liability only arises in cases where the third person is in privity with the client or the attorney acts maliciously. *Taylor v. Microdot* (1992), 79 Ohio App.3d 485, 491, 607 N.E.2d 855, 858–859 (citing *Scholler v. Scholler* [1984], 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158, syllabus). See, also, *Simon v. Zipperstein* (1987), 32 Ohio St.3d 74, 512 N.E.2d 636; *Columbus Consol. Agency, Inc. v. Wolfson* (1990), 70 Ohio App.3d 467, 591 N.E.2d 385; *DiPaolo v. DeVictor* (1988), 51 Ohio App.3d 166, 555 N.E.2d 969.

In this case, there is no evidence of privity between Mandilakis and AMEX or First Data. In cases involving will drafting and title examinations, some courts have imposed liability upon attorneys for damages sustained by nonclient third parties where the nonclient was an intended beneficiary of the attorney's services. See *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.* (1988), 106 N.M. 757, 761, 750 P.2d 118, 122. However, there is no evidence that Mandilakis had any business with AMEX or First Data that was within the scope of the representation provided by Scanlon such that AMEX or First Data could be viewed as an intended beneficiary. In addition, AMEX and First Data did not go forward with any evidence that Scanlon acted maliciously during his representation of Mandilakis. Absent any evidence of privity between Mandilakis and American Express or malice by Scanlon, we conclude that there is no basis to apply these exceptions to the general rule that attorneys are not liable to nonclient third parties for legal malpractice.

■ However, AMEX and First Data argue that they need not show a relationship to show a duty. The duty to disclose exists in DR 7–102(B)(1), and it applies to any third party.

■ DR 7–102(B)(1) places a duty on an attorney to disclose a client's fraud. The question is whether a failure in the exercise of that duty results in actionable civil liability. We think not. The Preface to the Code of Professional Responsibility reads as follows:

"The Disciplinary Rules, unlike the Ethical Considerations, are mandatory in character. The Disciplinary Rules state the minimum level of conduct below

which no lawyer can fall without being subject to *disciplinary action.*" (Emphasis added.)

■ Furthermore, the Code of Professional Responsibility lists only disciplinary action as a possible sanction for violation of the Disciplinary Rules. "A complaint of misconduct by an attorney for violation of a Disciplinary Rule subjects the attorney to disciplinary action such as reprimand, suspension or disbarment from the practice of law. Jurisdiction is with the Supreme Court of Ohio." *David v. Schwarzwald, Robiner, Wolf & Rock, supra,* 79 Ohio App.3d at 802, 607 N.E.2d at 1183 (citing *Palmer v. Westmeyer* [1988], 48 Ohio App.3d 296, 298, 549 N.E.2d 1202, 1205). There is no mention of civil liability.

AMEX and First Data argue that it is the silence of the Code in specifically proscribing civil liability that indicates an intent to make lawyers civilly liable to third parties. This argument ignores the history of both the Code and lawyers' civil liability for legal malpractice. Ohio has specifically held that liability to third parties may exist but only where there is privity. The Supreme Court has declined to extend liability beyond this realm. Besides, to allow actions in negligence under the Code of Professional Responsibility would defeat the purpose of the Code and create a factual nightmare.

Consequently, we conclude that DR 7–102(B) does not impose upon attorneys a duty whose breach would be actionable at law by a nonclient third party.

Finding no merit to AMEX and First Data's assignment of error, we affirm the judgment of the trial court.

*Judgment affirmed.*

KARPINSKI and MCMONAGLE, JJ., concur.