Plaintiff-appellant Lee A. Sooy has appealed from a judgment of the Lorain County Common Pleas Court that granted summary judgment to the defendants-appellees Ross Incineration Services, Inc., Doug Warren, and Mark Gibson. This Court affirms.
 I.
Defendant Ross Incineration Services, Inc. (Ross) employed plaintiff from March 28, 1983, to May 3, 1994, as a maintenance millwright in its waste facility. On April 12, 1994, during work hours, another Ross employee, defendant Douglas Warren, was physically overwhelmed by several co-workers, was dragged to an upright pole, and was duct-taped to the pole from head to foot. When Ross's upper management learned of the incident, they conducted an internal investigation. As a result of the investigation, Ross learned that five of Warren's co-workers were allegedly involved in the incident: plaintiff, Kent Hahn, Tim Calvey, William Rourke, and Steve Dusky. When the investigation was complete, Ross terminated those five employees.
Plaintiff filed a complaint in the Lorain County Court of Common Pleas alleging that Ross had been negligent in its investigation and had wrongfully discharged him from its employ. He also alleged that defendants Douglas Warren and Mark Gibson, his co-workers at Ross, had committed fraud and had interfered with his business relations by implicating him in the incident. Defendants moved the trial court for summary judgment. Plaintiff responded in opposition to the motion. The trial court granted defendants' motion for summary judgment. Plaintiff timely appealed, asserting one assignment of error.
 II.
Plaintiff's sole assignment of error is that the trial court improperly granted defendants' motion for summary judgment. Plaintiff has argued that the grant of summary judgment was improper because:
 [1] Genuine issue[s] of material fact existed when the record contained evidence that [plaintiff] reasonably relied on [defendant] Ross's assurances of continued employment, thus precluding summary judgment.
 [2] Genuine issues of material fact existed whether Ross has just cause for discharging [plaintiff], thus precluding summary judgment.
 [3] Genuine issue[s] of material fact existed when the record contained evidence that [defendants] Warren and Gibson tarnished [plaintiff's] reputation when they made false and fraudulent statements, thus precluding summary judgment.
 [4] Genuine issue[s] of material fact existed when the record contained evidence that Warren and Gibson tortiously interfered with [plaintiff's] rightful employment with Ross, thus precluding summary judgment.
In reviewing a trial court's ruling on a motion for summary judgment, this Court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829. In Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293, the Ohio Supreme Court outlined the respective burdens upon the moving and nonmoving parties in the context of a motion for summary judgment pursuant to Rule 56 of the Ohio Rules of Civil Procedure:
 [W]e hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under [Rule] 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case.
 Rather, the moving party must be able to specifically point to some evidence of the type listed in [Rule] 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in [Rule] 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
(Emphasis sic.) These principles were reaffirmed in Vahila v.Hall (1997), 77 Ohio St.3d 421, 430.
Thus, unless the movant fulfills both prongs of the Dresher
duty, the motion for summary judgment must be denied. The moving party is required to state the basis for his motion and then point to "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any" that support the motion. Rule 56(C) of the Ohio Rules of Civil Procedure. Merely alleging that a nonmoving party lacks evidence does not satisfy that obligation. Unless and until that burden is met, the nonmovant is under no corresponding duty, and the motion must be denied. "[A] movant's conclusory assertions of no evidence against the nonmovant [are] no longer good enough in Ohio." Am. ExpressTravel Related Serv. Co., Inc. v. Mandilakis (1996), 111 Ohio App.3d 160,164.
However, once the movant satisfies his burden, the nonmovant must then present or point out evidence that satisfies his reciprocal burden to demonstrate the existence of a material factual dispute. Pursuant to Rule 56(E) of the Ohio Rules of Civil Procedure, a nonmovant "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." If the nonmovant fails to satisfy his reciprocal burden, summary judgment, if appropriate, should be granted. Rule 56(E) of the Ohio Rules of Civil Procedure. This Court will analyze both parties' arguments and the evidence presented in support of those arguments to establish whether the respective burdens have been met.
 A.
Wrongful Discharge Claim
1. Ross's Dresher Burden
First, Ross argued that it was entitled to summary judgment on the wrongful discharge claim because plaintiff was an at-will employee pursuant to a written employment contract and was terminated properly under the terms of the agreement. As a general rule, Ohio follows the doctrine of employment-at-will. See, generally, Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100.
Under that doctrine, unless otherwise agreed, either party to an employment-at-will agreement may terminate the employment relationship for any reason not contrary to law. Id. at paragraph one of the syllabus. When the clear and unambiguous language of an employment contract allows either party to terminate at any time with or without cause, courts will not inquire into the motive for the termination, so long as the termination was not in violation of statute or public policy. See, generally, Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134,148-50; Edelman v. Franklin Iron Metal Corp. (1993),87 Ohio App.3d 406, 410-11.
In support of its argument, Ross pointed to the employment agreement that plaintiff signed during the course of his employment with Ross. On February 12, 1987, plaintiff entered into an Employment and Trade Secrets Agreement (Agreement) with Ross that contained, inter alia, the following provisions:
 8.1 Termination by Notice. Except as otherwise provided in Section 8.2 or Section 8.3, this Agreement may be terminated by either Ross or Employee, at-will, at any time and for any reason (with or without good cause) upon the expiration of three (3) days after written notice is mailed (by ordinary United States mail) or personally delivered by the terminating Party to the other Party.
 Ross shall have the sole discretion to determine whether Employee shall continue to render services hereunder during such notice period but, for any termination under this Section 8.1, Ross shall continue to pay Employee's
Base Pay during the notice period.
 8.3 Breach or violation. Notwithstanding Section 8.1 or any contrary provision of this Agreement, Ross may immediately terminate this Agreement without prior demand or notice if: (i) Employee breaches or fails to perform any of Employee's obligations, duties, promises or representations made in this Agreement, including (but not limited to) Employee's promises in Section 5 and Section 10; or (ii) Employee commits a crime against Ross, any of the Ross Companies, or any of their respective Officers, Directors, employees, customers or agents; or (iii) Employee commits any crime (except a minor traffic offense) or any act involving fraud, dishonesty or moral turpitude; or (iv) Employee fails to follow or adhere to any employment directive, order or employment policy issued by Ross or by its authorized agent.
Ross argued that the clear and unambiguous language of the employment contract with plaintiff provides that the employment relationship was at-will. Because at-will employment can be terminated with or without cause, Ross asserted that plaintiff could not prove his claim of wrongful discharge. Ross argued that no genuine issues of material fact existed and that, therefore, it was entitled to summary judgment as a matter of law.
Second, Ross argued that, even if plaintiff was not an at-will employee, Ross had "just cause" to terminate his employment. Ross argued that plaintiff's employment was terminated, pursuant to Section 8.3 of the Agreement, for his participation in physically restraining and duct-taping Warren to a pole. In support of this argument, Ross pointed to the Agreement, Ross's Rules of Conduct, plaintiff's termination report, and the affidavit of James Heimbuch[1] (Heimbuch), the Ross employee who investigated the taping incident. Ross contended that plaintiff's behavior constituted a "Group A" violation of Ross's Rules of Conduct which provides for immediate termination of the employee.
Heimbuch stated that Ross operates a hazardous waste incineration facility and that by the nature of its business, the facility is heavily regulated and safety concerns are paramount. After he learned of the taping incident from the president of Ross, he undertook an immediate investigation with the assistance of Cliff Goytowski, Leslie Baesel, and outside legal counsel. He believed that the serious nature of the incident demanded the attention of executive management. Further, he felt that it was appropriate for him to conduct the investigation because he was well acquainted with the facility yet sufficiently above the day-to-day personnel matters to be impartial and objective. The investigation was conducted from April 27, 1994 through May 6, 1994. The investigation consisted of conducting a series of interviews.
Warren, the victim, was interviewed. He stated that the employees who taped him to the pole were plaintiff, Kent (Pete) Hahn, William Rourke, Steve Dusky, and Tim Calvey. He further stated that Mark Gibson, Dennis Rourke, and John Kish witnessed the incident. According to Heimbuch, Warren, Hahn, Calvey, and Gibson, all provided consistent testimony that plaintiff was a participant in the incident. Attached to the affidavit were written summaries of each interview, a sworn statement from Gibson, a supplemental statement from Warren, and a statement from Steve Dusky.
Plaintiff was also interviewed regarding the incident. According to Heimbuch, plaintiff initially stated that there was no incident, and then later stated that if there was an incident he was not involved. Heimbuch stated that plaintiff was evasive about the matter. As a result of the investigation, Ross management concluded that plaintiff was involved in the incident.
Heimbuch stated that Ross management considered the incident to be a serious violation of Ross's Rules of Conduct, specifically a "Group A" violation calling for termination of employment of those who committed the act, as well as violations of certain "Group B and C" rules, and the Agreement. Heimbuch stated that all employees were aware of the Rules of Conduct because they were issued to each employee. A copy of a document signed by plaintiff signifying his receipt of the rules was attached to the affidavit.
Ross produced a copy of plaintiff's "Termination Report" and "Disciplinary Warning Notice." Both documents contain statements that plaintiff's behavior violated six specific provisions of Ross's Rules of Conduct. The specific rules that plaintiff's conduct violated are as follows:
 Group A First Violation Immediate Termination (5 points)
Fighting, striking another person.
 6. Willful carelessness, restricting or slowing down of production or output.
 15. Willful act which threatens the safety, health or well-being of another person or oneself.
 Group B First Violation Suspension (3) Days (3 points)
Second Violation Termination (5points)
 5. An act which threatens the safety, health or well-being of another person or oneself.
 Group C First Violation Written Reprimand (2 points)
Second Violation Suspension (3) Days (3 points)
Third Violation Termination (5 points)
 Harassing, threatening, intimidating, or interfering with work ability of fellow employees; or the use of profane language toward any employee.
 Engaging in horseplay, practical jokes or throwing things.
Both of those documents support Ross's argument that it terminated plaintiff's employment on those grounds.[2]
Finally, Ross pointed to plaintiff's deposition testimony regarding the investigation performed by Heimbuch. Plaintiff admitted that Ross interviewed everyone in his department, that Ross had a right to expect that its employees would tell the truth, and that Ross had a right to draw its own conclusions from those interviews. Ross argued that plaintiff's complaints about the investigation were "procedural rather than substantive." Ross compared plaintiff's arguments to those propounded by the appellant in Hill v. MTD Prods., Inc. (Apr. 10, 1996), Medina App. Nos. 2477-M and 2483-M, unreported.
In Hill, the appellee terminated the appellant's employment after performing an investigation that substantiated written allegations that the appellant had been sexually harassing some of the female employees. The appellant filed a complaint alleging, among other things, breach of contract and promissory estoppel claims. He alleged that his termination constituted a breach of the appellee's promises or breach of implied contract because the appellee discharged him without just cause and without following the requisite procedures.
The appellee moved for, and was granted, summary judgment on all of the appellant's claims. The appellee had taken written statements alleging sexual harassment and then hired a private investigator to conduct an investigation into employee theft, sexual harassment, and drug and alcohol use at the plant. The investigator was not told to focus on any particular individual. The appellant was terminated when the appellee determined that the results of the investigation provided overwhelming support for the written allegations.
In reviewing the propriety of the grant of summary judgment, this Court noted that the appellant did not dispute the fact that, if true, the allegations of sexual harassment constituted just cause for termination. Id. at 5. The appellant's argument was that the allegations were not true, and that the appellee's investigation was inadequate to discover the truth. This Court held that the grant of summary judgment was proper because the appellant failed to point to any evidence that he was entitled to a further investigation. Id. at 5-6.
Ross, therefore, argued that it performed a thorough and unbiased investigation of the taping incident. As a result of that investigation, four individuals informed Ross that plaintiff was involved in that incident. Ross had a right to rely on the truth of those allegations. The allegations of plaintiff's involvement, if true, constituted a violation of Ross's Rules of Conduct that could result in termination. Plaintiff had received a copy of Ross's Rules of Conduct and was aware of prohibited behavior. Ross had cause to terminate plaintiff. Accordingly, Ross argued that it was entitled to summary judgment because plaintiff would have been unable to prove that Ross was negligent in its investigation of the incident and that his termination was wrongful.
After reviewing the record, this Court concludes that Ross satisfied both prongs of its Dresher burden. Ross stated that it was entitled to summary judgment on the basis that plaintiff was an at-will employee, and it pointed to the clear and unambiguous language of the employment contract that supported that argument. Further, Ross stated that, even if plaintiff was not an employee-at-will, Ross had "just cause" to terminate his employment, and it pointed to evidence to support the results of its investigation. Absent an adequate rebuttal by plaintiff demonstrating a genuine issue of material fact, Ross was entitled to summary judgment on plaintiff's wrongful discharge claim as a matter of law.
2. Plaintiff's Dresher Burden
Plaintiff responded to defendants' motion for summary judgment and contended that his employment relationship with Ross was not at-will and that Ross conducted an incomplete and cursory investigation and wrongfully discharged him as a result. First, he contended that either an implied contract existed or the promissory estoppel exception applied; therefore, he was not an employee-at-will. He relied on Mers v. Dispatch Printing Co., 19 Ohio St.3d at paragraphs one and two of the syllabus, in which the Ohio Supreme Court recognized two exceptions to the doctrine of at-will employment: promissory estoppel and implied contract.
The Supreme Court held that the doctrine of promissory estoppel does apply to and is binding upon oral at-will employment agreements. Mers, at paragraph three of the syllabus. The test to be applied is "whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." Id. This Court has outlined three requirements that must be met before promissory estoppel will apply. Penwell v. Amherst Hosp. (1992), 84 Ohio App.3d 16,19. First, the employee must point to a "representation" by the employer that could be reasonably interpreted as limiting the employer's ability to terminate the employment relationship. Id. Second, the employee must show that he changed his position in reliance on that representation to his detriment. Id. Third, the employee must show that his reliance was justified and reasonable. Id.
The Supreme Court also held that the facts and circumstances surrounding an oral at-will employment agreement may give rise to an implied contract. See Mers, supra, at paragraph two of the syllabus.
 The facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge.
Id. The party asserting an implied contract of employment must prove each element necessary to prove the existence of a contract.Penwell, supra, at 21.
First, plaintiff argued that, when he signed the Agreement, Ross told him that it could not guarantee his employment if he did not sign the agreement. To support that argument, he pointed to his deposition in which he states, "If you didn't sign it, you would no more have employment there. They couldn't guarantee that." In his brief in opposition to summary judgment, plaintiff argued that "Ross's conduct regarding the agreement created the situation that, since it could not guarantee [plaintiff's] employment if he did not sign, it would guarantee [his] employment upon execution of the agreement."
Also, on March 21, 1983, he alleges that he was "forced" to sign a document titled "Inventions, Improvements and Trade Secrets Agreement" ("IITS Agreement"), in which the employee agreed to keep trade secrets. He pointed to the following language in that agreement to support his argument that Ross made a promise of continued employment: "as part of the consideration of my employment by, performing services for, or otherwise being associated with the Company, I hereby agree as follows [employee agrees to keep trade secrets, etc.]." He, therefore, argued that Ross made a "clear promise for guaranteed employment." Additionally, he argued that his signing the IITS Agreement and promising to safeguard the trade secrets provided consideration for Ross's guarantee of continued employment.
In his brief, plaintiff stated that, based on Ross's promise of guaranteed employment, Ross should have reasonably expected that plaintiff would forgo other employment. Plaintiff alleged that he decided not to earn a living from his farm business and did not pursue other employment options.[3] He, therefore, concluded that there was enough evidence in the record to create a question of material fact as to his promissory estoppel claim and his implied contract claim.
Second, plaintiff argued that Ross's practices and customs of disciplinary procedure illustrated that Ross did not have an at-will employment relationship with him.[4] He stated that Ross's custom regarding termination was to determine if its rules of conduct fit the situation and, if the rules did apply, it applied them on a general basis. He has argued that Ross's custom regarding termination of employees along with the assurances of continued employment that he allegedly received from Ross could be considered when determining the parties' intent as to the nature of the employment relationship.
In support of this argument, plaintiff pointed to the deposition of Heimbuch, the Ross employee in charge of the investigation of the incident. Heimbuch stated that, "if there is a potential disciplinary issue, we would refer to these rules and see whether they fit or not, and would apply them on a general basis." Heimbuch also stated that if plaintiff had not participated in the incident he would not have been terminated. Plaintiff argued that he was terminated even though there was no specific knowledge that he violated the rules of conduct. Plaintiff also argued that Ross fired him for violations that were inapplicable to the incident; therefore, it did not follow its procedures in an impartial way. Plaintiff, consequently, argued that a material question existed as to plaintiff's rights and expectations pursuant to the customs established by Ross and his employment contract with Ross.
Third, plaintiff alleged that defendant Ross wrongfully discharged him based on "its faulty and incomplete investigation of the incident and its reliance on the false, malicious, intentional, and fraudulent statements of [defendants] Warren and Gibson." He argued that he denied any active participation in the incident; therefore, the actual events and participation of parties were in dispute. He again argued that Ross did not follow its disciplinary custom in an impartial way and that the rules of conduct stated by Ross as cause for his termination did not apply. Plaintiff, therefore, concluded that Ross was estopped from claiming that plaintiff's termination was justified and for just cause.
Plaintiff has argued that his objection to the investigation conducted by Ross was substantive, not procedural. He has alleged that the investigation lacked any in-depth attempt to determine what actually occurred. He stated the investigation, "merely consisted of Ross believing Warren and Gibson over the others, with no attempt to discover the facts independently." Plaintiff argued that Ross could only rely on its investigation to terminate plaintiff if the information it relied on was correct. According to plaintiff, "Ross must have known that Gibson's and Warren's statements were not true." Plaintiff claimed that there were "many" discrepancies between the statements made by Warren and Gibson and those of the others interviewed.
Plaintiff alleged that it was "impossible" for Ross to make "accurate conclusions" due to its incomplete investigation that consisted of interviewing individuals with conflicting stories. He alleged that others present at the incident that did not participate were not interviewed. He argued further that the investigation was peripheral because he was only interviewed once, while Gibson was interviewed twice and Warren was interviewed five times.
Plaintiff has failed to meet his summary judgment burden. He has conceded the existence of a written contract of employment, yet has tried to argue that Ross's "representations" of continued employment preceded and were consideration for his signing the Agreement. "Promissory estoppel does not apply to oral statements made prior to the written contract, where the contract covers the same subject matter." Borowski v. State Chem. Mfg. Co. (1994),97 Ohio App.3d 635, 643. Therefore, any "representations" on which plaintiff relied prior to entering into the written contract do not create a genuine issue of material fact. Further, generally, when an express contract, unambiguous in its terms, exists between the parties, no recovery can be had upon an implied contract.Freeman v. Montessori Sch. of Bowling Green, Inc. (Sept. 2. 1994), Wood App. No. 93WD098, unreported, 1994 Ohio App. LEXIS 3803 at *7.
Even if the promissory estoppel or implied contract exceptions were applicable, plaintiff's claim fails because he failed to show that he detrimentally relied on the statements. He alleged in his complaint that he decided not to earn a living from farming and that he did not pursue other employment options. To satisfy his reciprocal burden under Dresher, plaintiff had the duty to set forth specific facts because mere allegations or denials of the party's pleadings are not enough. Plaintiff did not provide affidavits, deposition testimony, or other similar evidence to show he relied on any of the alleged promises of Ross to his detriment.
Because plaintiff was an employee-at-will, Ross did not need "just cause" to terminate the employment relationship. Ross, therefore, had the right to terminate plaintiff for any reason not contrary to law or public policy. Accordingly, plaintiff's argument that defendant wrongfully terminated his employment based on negligent investigation and reliance on fraudulent statements is without merit.
Even if plaintiff was not found to be an employee-at-will, he failed to provide any evidence that Ross was negligent in its investigation of the incident. Heimbuch's statement regarding the reference to the disciplinary rules and the general application of those rules does not provide support for plaintiff's argument. He has failed to show that Heimbuch did not follow this procedure in this instance. In fact, there is evidence in the record to the contrary. Heimbuch testified that he conducted interviews with the individuals involved in the incident as well as other employees in the facility. Heimbuch testified that during the investigation he referred to the rules of conduct and determined that plaintiff's participation in the incident fit under those rules. Plaintiff has not shown that he was entitled, due to Ross's practice or custom, to a more extensive investigation.
Accordingly, plaintiff's arguments regarding wrongful discharge are without merit. Summary judgment, therefore, was properly granted to Ross on plaintiff's claim for wrongful discharge.
 B.
Fraud
1. Warren and Gibson's Dresher Burden
First, Warren and Gibson argued that they were entitled to summary judgment because Ross did not need their statements to justify plaintiff's termination. Essentially, Warren and Gibson pointed to the Agreement and argued that, because plaintiff was a party to a written at-will employment agreement, he could be terminated at any time. They alleged that any statements they made during the investigation could have no legal effect; therefore, any claim against them for Ross's termination of plaintiff's employment could not be maintained.
Second, Warren and Gibson argued that plaintiff could not prove each and every element of his claim for fraud.
 A claim of common-law fraud requires proof of the following elements: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.
Potocnik v. Sifco Industries, Inc. (1995), 103 Ohio App.3d 560,571, quoting Russ v. TRW, Inc. (1991), 59 Ohio St.3d 42, 49. The Ohio Supreme Court has held that a party cannot maintain an action for fraud when the fraudulent representations were not made to him to induce him to act upon them in any matter affecting his own interests. See Wells v. Cook (1865), 16 Ohio St. 67, syllabus. Accordingly, a plaintiff claiming that a third party relied on a misrepresentation made by the defendant and that the plaintiff suffered injury thereby does not state a valid cause of action for fraud. See Russell v. Northwood (Feb. 27, 1998), Wood App. No. WD-97-050, unreported, 1998 Ohio App. LEXIS 717, *10.
Warren and Gibson asserted that neither of them made any statements to or concealed any information from plaintiff nor did plaintiff rely on any statements made by them. First, they pointed to plaintiff's deposition testimony in which he admitted that no false statements were made to him by Warren or Gibson. Second, they pointed to plaintiff's testimony that he did not rely on any statements made by Warren or Gibson.
Finally, they argued that plaintiff suffered no damages. They pointed to plaintiff's testimony that he suffered no mental distress, physical harm, or economic damages. They also pointed to plaintiff's testimony that, after his termination from Ross, he took a job at a higher rate of pay and his farm continued to operate without injury from the events at Ross.
After reviewing the record, this Court concludes that Warren and Gibson satisfied both prongs of their Dresher burden. They stated that they were entitled to summary judgment on the fraud claim, and they pointed to plaintiff's testimony to support their argument that plaintiff could not prove each and every element of his claim for fraud. Absent an adequate rebuttal by plaintiff demonstrating a genuine issue of material fact, Warren and Gibson were entitled to summary judgment on plaintiff's fraud claim as a matter of law.
2. Plaintiff's Dresher Burden
Plaintiff argued that summary judgment was not appropriate because Ross relied on the statements of Warren and Gibson and terminated his employment as a direct result. Plaintiff pointed to the testimony of Heimbuch to support his argument. Heimbuch gave the following testimony:
 He was terminated because he participated. And if he didn't participate, if this investigation had found that he hadn't participated, he wouldn't have been terminated. The answer is that simple.
Plaintiff argued that even though Ross may not have needed Warren's and Gibson's statements to terminate his employment, those statements were the only basis for his termination; therefore, they were material and pivotal to Ross's decision to terminate his employment. Plaintiff argued that he was, in fact, injured by the alleged fraud. He argued that, due to the allegedly fraudulent statements of Warren and Gibson, he lost his gainful employment with Ross and his reputation was damaged.
Further, plaintiff argued that a genuine issue of material fact existed as to whether the statements by defendants Warren and Gibson were fraudulent. He pointed to the depositions of Warren and Gibson as well as the depositions of other witnesses to the incident. He argued that Warren and Gibson gave conflicting testimony as to several aspects of the incident, and that Gibson later recanted the testimony that he gave to defendant Ross regarding plaintiff's involvement in the incident. He further argued that, based on the conflicting testimony, the involvement of other individuals was in dispute. Additionally, he argued that Warren and Gibson were both aware of the falsity of their statements because both were present during the incident. In attempting to refute the argument that there can be no fraud because neither Warren nor Gibson made statements directly to plaintiff, plaintiff argued that Warren and Gibson, as employees and agents of Ross, perpetrated the fraud through those statements. In effect, he has argued that Warren and Gibson, as agents of Ross, made fraudulent misrepresentations to Ross regarding his involvement, that Ross fired him in reliance on those fraudulent statements, and that he was injured by Ross's reliance.
Even assuming that plaintiff's allegations are true, Warren and Gibson were entitled to summary judgment on plaintiff's fraud claim. In order to defeat the motion for summary judgment, plaintiff must show that Warren and Gibson made false representations to either him or his agent with the intent that he would rely on them and that he was injured as a result of that reliance. Plaintiff has failed to rebut defendants' arguments that no representations were made to him and that he did not rely on any representations that were made by Warren and Gibson. In fact, he has conceded that the statements were made to Ross and that Ross relied upon them to his detriment.[5] Additionally, plaintiff has never alleged or asserted that Ross was acting as his agent. As previously noted, a plaintiff fails to state a valid cause of action when he alleges that a third party relied on misrepresentations made by a defendant and that he suffered injury from that third party's reliance. See Russell, supra at *10. Plaintiff, therefore, has failed to show that he can maintain a cause of action for fraud in this situation. Plaintiff's arguments that a genuine issue of fact existed as to his claims for fraud are without merit. Summary judgment was properly granted to Warren and Gibson on plaintiff's claims for fraud.
 C. Tortious Interference
In Ohio, an employee earning a living has a right to pursue employment free from interference by third parties. Contadino v.Tilow (1990), 68 Ohio App.3d 463, 467. The right of non-interference is, however, limited. Id. "There are those whose position vis-i-vis the employee and the employer entitles them to intrude upon the employment relationship." Id.
In Anderson v. Minter (1972), 32 Ohio St.2d 207, 213, the Ohio Supreme Court noted that causes of action against "out-siders" for malicious interference with employment have been recognized. However, the court further noted that when:
 [T]he act complained of is within the scope of a defendant's duties, a cause of action in tort for monetary damages does not lie. Nor can liability be predicated simply upon the characterization of such conduct as malicious.
Id. Although the holding in Anderson was limited to supervisors in the civil service realm, this Court has extended that holding to apply to co-workers in private employment contexts.[6] InNorris v. Diamond Products, Inc. (Dec. 5, 1984), Lorain App. No. 3688, unreported, at 3, this Court held that "under Ohio law an employee cannot interfere [i.e. cannot be liable in tort] with the business relationship of a co-worker and his employer corporation if the action taken by the employee occurs within the scope of his authority." Consequently, in order to maintain a cause of action for tortious interference with employment against a co-worker, the plaintiff must demonstrate that the defendant acted solely in his or her personal capacity. Russell, supra, at *6-7.
1. Warren and Gibson's Dresher Burden
In their motion for summary judgment, Warren and Gibson established that they were the plaintiff's co-workers at the time of the incident. Further, Warren and Gibson argued that their statements were given to Ross as private testimony in Ross's investigation of the incident. They argued that, pursuant to GoalSystems Internatl., Inc. v. Klouda (Oct. 10, 1985), Franklin App. No. 84AP-168, unreported, 1985 Ohio App. LEXIS 8799, employees owe a duty of good faith and loyalty to their employer's interest. They asserted that that duty included cooperating with their employer in its investigation of the serious incident that occurred on its premises.
Warren and Gibson pointed to the affidavit of Heimbuch, who was in charge of the investigation of the incident, in support of their arguments. Heimbuch stated that when he learned of the incident from the president of Ross, he undertook an immediate investigation of the incident. The investigation was conducted primarily from April 27, 1994 through May 6, 1994 and included interviews of several witnesses, including Warren and Gibson. Of those interviewed, four employees provided eyewitness testimony about the incident. The statements of those four employees were consistent that plaintiff had participated in the incident. As a result of the face-to-face interviews with the witnesses and the plaintiff, Ross concluded that plaintiff was a participant in the incident. As a result, Ross terminated plaintiff's employment.
After reviewing the record, this Court concludes that Warren and Gibson satisfied both prongs of their Dresher burden. They asserted that the statements were made within the scope of their authority and pointed to evidence demonstrating the scope of their authority. Absent an adequate rebuttal by plaintiff demonstrating a genuine issue of material fact, Warren and Gibson were entitled to summary judgment on plaintiff's tortious interference claim as a matter of law.
2. Plaintiff's Dresher Burden
Plaintiff did not dispute the fact that plaintiff, Warren, and Gibson were co-workers at the time of the acts complained of by plaintiff. Further, plaintiff did not dispute that the statements by Warren and Gibson were made to Ross in response to its investigation of the incident. Under Ohio law, therefore, plaintiff would not have a valid cause of action if Warren and Gibson were acting within the scope of their authority when the statements were made.
Plaintiff failed to meet his summary judgment burden. In response to Warren and Gibson's motion for summary judgment, plaintiff did not point to any evidence to dispute that when the statements were made, Warren and Gibson were acting within the scope of their authority. Accordingly, this Court concludes that no genuine issue of material fact existed and that Warren and Gibson were entitled to judgment as a matter of law. Plaintiff's third argument is without merit.
 III.
Plaintiff's assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
 KK The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BETH WHITMORE
FOR THE COURT SLABY, P.J.
CARR, J.
CONCUR
[1] Heimbuch is the Senior Vice-President and Chief Operating Officer of Ross Environmental Services Inc., an affiliate of Ross Incineration Services.
[2] Ross has argued that plaintiff was given notice of termination of his employment on May 3, 1994, and was formally discharged on May 6, 1994. The evidence presented by Ross, however, is inconclusive. Ross has pointed to plaintiff's deposition in which plaintiff states that he was terminated on May 3, 1994, and was not paid after that date. Ross also has pointed to parts of plaintiff's deposition in which Ross was trying to ascertain if plaintiff received a copy of the "Disciplinary Warning Notice" and the "Termination Report" on the date of his termination. Finally, Ross points to the "Disciplinary Warning Notice" and the "Termination Report" to support its argument that plaintiff had notice. These documents contradict their argument. Both documents were signed by several individuals on either May 5, 1994, or May 6, 1994. This makes it difficult for Ross to show that plaintiff was given notice on May 3, 1994. Further, on the "Termination Report", in the part of the form marked "For Office Use Only" there is a line containing the words "Days Notice" and the box marked "No" is checked. The issue of whether plaintiff received notice, however, does not effect this Court's determination of the wrongful termination claim.
[3] At his deposition, plaintiff testified that he had owned and operated a dairy farm for twenty-one years. In 1983, the farm was converted to crop farm that is still owned and operated by him. During the time of his employment with Ross, he continued to own and operate the farm.
[4] In his brief to this Court, plaintiff has alleged that Ross assured him that if he followed the disciplinary code, he would remain employed. He also alleged that, once the investigation began, Ross specifically made the statement to him that he would remain employed if the investigation revealed that he was not involved in the incident. Evidence of such statements does not appear in the record, nor does it appear that plaintiff included those allegations in his brief to the court below. Appellate review is limited to the record as it existed at the time judgment was rendered. See McKay v. Cutlip (1992), 80 Ohio App.3d 487,490, fn. 3. See also Rule 12(A) of the Ohio Rules of Appellate Procedure. These allegations, therefore, will not be considered.
[5] In fact, if plaintiff's allegations are true, Ross might have a valid cause of action against Warren and Gibson for fraud.
[6] Other appellate courts have also extended the holding inAnderson. See, e.g. Contadino v. Tilow (1990), 68 Ohio App.3d 463; Russell v. Northwood (Feb. 27, 1998), Wood App. No. WD-97-050, unreported, 1998 Ohio App. LEXIS 717.