DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Plaintiffs, Edward M. Perkinson and Susannah W. Perkinson ("Perkinsons"), Edward M. Perkinson and Susannah W. Perkinson, Inc. ("Corporation"), and The Edward M. Perkinson and Susannah W. Perkinson, Inc. Profit Sharing and Thrift Trust ("Trust"), have appealed from an order of the Summit County Common Pleas Court that granted defendants Merrill Lynch Pierce Fenner and Smith, Inc. ("Merrill Lynch") and Brian Shoemaker summary judgment and granted defendant Patricia Vance partial summary judgment. This Court affirms the grant of summary judgment to Merrill Lynch and Shoemaker. Because the grant of partial summary judgment in favor of Vance is not a final appealable order, this Court does not reach that issue.
 I.
On June 27, 1997, Plaintiffs filed a complaint in the Summit County Common Pleas Court against defendants Merrill Lynch, Shoemaker, Vance, General Business Services, Inc. ("GBS"), General Tax Services, Inc. ("GTS"), James McCausland, Patricia Ritzert and Flo-Jim, Inc. ("Flo-Jim"). Plaintiffs stated that, upon the advice and counsel of one or more of the defendants, the Perkinsons created the Trust that established a profit sharing plan ("PSP"). Also, Plaintiffs stated that based on the advice and counsel of the defendants, the Perkinsons established a Simplified Employee Pension Plan ("SEP"). Plaintiffs' complaint alleged generally that they retained one or more of the defendants to establish, maintain and/or perform certain duties or obligations including regulatory compliance in connection with the PSP and/or the SEP. Plaintiffs further alleged that they retained one or more of the defendants to prepare, report and perform certain duties and obligations in connection with Plaintiffs' tax reporting forms for the PSP and/ the SEP. Plaintiffs asserted that they were damaged by the negligence of one or more of the defendants in the performance of their duties.
On March 3, 1998, Ritzert moved the trial court for summary judgment. The trial court granted her motion. Eventually, all of the remaining defendants moved the trial court for summary judgment. The trial court denied the motions of GBS, GTS, Flo-Jim and McCausland on the grounds that genuine issues of material fact existed. The trial court granted summary judgment to Merrill Lynch and Shoemaker. Finally, the trial court granted partial summary judgment to Vance.
Although the trial court's order did not terminate all of Plaintiffs' claims against all of the parties, the trial court determined that there was no just reason for delay pursuant to Civ.R. 54(B). Plaintiffs timely appealed, asserting two assignments of error.
 II. A. The Trial Court erred in granting summary judgment to[defendants] Merrill Lynch Pierce Fenner Smith, Inc., andBrian Shoemaker.
In their first assignment of error, Plaintiffs have asserted that the trial court erred in granting summary judgment to Merrill Lynch and Shoemaker because a genuine issue of fact existed on the issue of Merrill Lynch and Shoemaker's capacity as the trustees of the Trust. Their assignment of error is without merit.
In reviewing a trial court's ruling on a motion for summary judgment, this Court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829. In Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293, the Ohio Supreme Court outlined the respective burdens upon the moving and nonmoving parties in the context of a motion for summary judgment pursuant to Civ.R. 56:
 [W]e hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case.
 Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
(Emphasis sic.) These principles were reaffirmed in Vahila v.Hall (1997), 77 Ohio St.3d 421, 430.
Thus, unless the movant fulfills both prongs of the Dresher
duty, the motion for summary judgment must be denied. The moving party is required to state the basis for his motion and then point to "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any," that support the motion. Civ.R. 56(C). Merely alleging that a nonmoving party lacks evidence does not satisfy that obligation. Unless and until that burden is met, the nonmovant is under no corresponding duty, and the motion must be denied. "[A] movant's conclusory assertions of no evidence against the nonmovant [are] no longer good enough in Ohio." Am. Express Travel Related Serv. Co., Inc. v.Mandilakis (1996), 111 Ohio App.3d 160, 164.
However, once the movant satisfies his burden, the nonmovant must then present or point out evidence that satisfies his reciprocal burden to demonstrate the existence of a material factual dispute. Pursuant to Civ.R. 56(E), a nonmovant "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." If the nonmovant fails to satisfy his reciprocal burden, summary judgment, if appropriate, should be granted. Id.
Plaintiffs essentially alleged that Merrill Lynch and Shoemaker had accepted the obligation of acting as trustees for the PSP established by the Trust. Plaintiffs contended that Merrill Lynch and Shoemaker, as trustees, failed to file the appropriate tax-reporting forms and failed to inform Plaintiffs of the obligation to file tax-reporting forms. Plaintiffs further alleged that Merrill Lynch and Shoemaker accepted funds that were clearly not deductible and failed to advise Plaintiffs as to the non-deductible status of the contributions. Plaintiffs maintained that Merrill Lynch and Shoemaker knew or should have known that there were excess contributions and failed to inform Plaintiffs of that fact. Finally, Plaintiffs asserted that Merrill Lynch and Shoemaker failed to timely amend the PSP in accordance with the Internal Revenue Code and/or failed to advise Plaintiffs of the necessity of amending the PSP.
Merrill Lynch and Shoemaker asserted in their joint motion for summary judgment that they were not trustees; therefore, they were entitled to summary judgment as a matter of law. In support of their motion, they submitted the affidavit of Shoemaker. Shoemaker averred that he was employed by Merrill Lynch as a financial consultant and a vice president. His duties as an employee of Merrill Lynch involved advising clients as to how to handle their finances relating to investments and securities.
Shoemaker stated that, in 1983, he advised the Perkinsons to put their money into an Individual Retirement Account rather than a SEP. The Perkinsons informed him that based on the advice of their tax counselor they wanted to open SEP plans despite Shoemaker's advice to the contrary. Shoemaker further averred that, on several occasions, he attempted to provide the Perkinsons with his thoughts as to tax issues regarding their retirement monies; however, the Perkinsons informed him that they were utilizing the services of a tax counselor and did not need his advice.
Shoemaker averred that Plaintiffs retained the services of Merrill Lynch and himself for the sole reason of providing investment advice with respect to the PSP. He asserted that neither he nor Merrill Lynch agreed to maintain the qualified status of the PSP or to amend the PSP to keep it qualified under the Internal Revenue Code. He further contended that neither he nor Merrill Lynch agreed to file tax reporting forms and that he informed Susannah Perkinson that Merrill Lynch would not be filing those forms.
As for the trust agreement executed by the Perkinsons, Shoemaker noted that Merrill Lynch has prototype retirement plans that it amends for changes in tax laws; however, the trust agreement signed by the Perkinsons and himself was not drafted by Merrill Lynch. Shoemaker admitted signing the trust agreement, acknowledging receipt of the document as the investment advisor to the PSP; however, he stated that he did not sign the agreement believing that either he or Merrill Lynch was becoming a trustee of the Trust. He further averred that the trust agreement does not list him or Merrill Lynch as trustees of the Trust.
Additionally, Shoemaker averred that he received documents in which the Perkinsons represented to him and Merrill Lynch that the Perkinsons were the trustees of the Trust. The first document he referred to was received October 19, 1983, ten days after he signed the trust agreement. That document, titled "Certificate of Trustee," contained the following language:
The Trust Agreement is in full force and effect.
The names of the Trustees now administering the Plan are:
Edward M. Perkinson
Susannah W. Perkinson
You may accept orders for transactions in our account(s) with you from the following named Trustees and Investment Managers, who may act singly unless otherwise indicated.
Edward M. Perkinson
Susannah W. Perkinson
We warrant to you that all transactions instructed by us for execution in our account(s) with you will be within the limitations respecting investments provided in applicable law and the instrument governing the plan being administered by us.
You may rely on this certification until you receive written notice to the contrary signed by all of the Trustees.
We warrant that we have the authority to execute this
Certification.
Signatures of Trustees
_______________________ ___________________________
/s/ Edward M. Perkinson /s/ Susannah W. Perkinson
He also averred to another document executed by the Perkinsons as trustees of the Trust. This document arranged for the transfer of funds and was signed by the Perkinsons as trustees. As trustees of the Trust, the Perkinsons, pursuant to the trust agreement, had the duty of preparing and filing tax returns and reports.
Alternatively, Merrill Lynch and Shoemaker asserted that even if they were trustees, the document executed by the Perkinsons on October 19, 1983, terminated their roles as trustees. The trust agreement provides, in pertinent part:
 The Trustee may be removed by the Board of Directors of the Company at any time by delivery of written notice of such action to the Trustee.
Merrill Lynch and Shoemaker asserted that when the Perkinsons, the sole directors of the Corporation, sent them the document certifying that the Perkinsons were the trustees of the Trust, they were effectively removed as trustees.
To establish actionable negligence, a plaintiff must show the existence of a duty, a breach of that duty and injury resulting proximately therefrom. Mussivand v. David (1989), 45 Ohio St.3d 314,318. In a negligence action, determining whether a duty exists is crucial because a defendant's failure to exercise ordinary care by failing to act will not amount to actionable negligence unless the defendant owed to the plaintiff a duty to exercise ordinary care. Id. The existence of a duty is, in the first instance, a question of law for the court. Id.
Merrill Lynch and Shoemaker met both prongs of their Dresher
duty. They asserted that the only duty that they owed to Plaintiffs was to provide investment advice to the Perkinsons. Merrill Lynch and Shoemaker pointed to the deposition testimony of the Perkinsons to establish that the Perkinsons were satisfied with their performance of that duty. Merrill Lynch and Shoemaker asserted that they did not owe any other legal duties to Plaintiffs and pointed to Shoemaker's affidavit to support that assertion. The burden, therefore, shifted to Plaintiffs to point to evidence that a genuine issue of material fact existed.
In response to Merrill Lynch and Shoemaker's motion for summary judgment, Plaintiffs asserted that it was clear from the trust agreement that Merrill Lynch and Shoemaker were trustees of the Trust. They asserted that three parties participate in the creation of a trust: the settlor, the trustee, and the beneficiaries. Essentially, Plaintiffs asserted that because Merrill Lynch and Shoemaker were not the settlors or the beneficiaries of the Trust they had to be trustees. They further asserted that it was clear from the language of the trust agreement that Merrill Lynch and Shoemaker were considered by both parties to be trustees of the Trust.
In support of their argument, Plaintiffs pointed to the deposition of David Kern. Kern holds an L.L.M. and has participated in drafting, correcting and monitoring compliance of pension plans. When asked where the trust agreement stated that Merrill Lynch and Shoemaker were the trustees, Kern referred to the first paragraph of the trust agreement. That paragraph states:
 This Trust Agreement, executed this 30 [sic] day of September, 1983, by and between Edward M. Perkinson and
 Susannah W. Perkinson, Inc., an Ohio corporation ("Company"), and Merrill, Lynch, Pierce, Fenner, Smith, Inc. * * *.
Kern stated that "[t]here is parallel sentence construction then [sic] execution that's consistent with [the contention that Merrill Lynch and Shoemaker signed the agreement as the trustees]." Kern conceded that Merrill Lynch and Shoemaker were not specifically titled as trustees in any portion of the trust agreement.
Plaintiffs further asserted that Merrill Lynch and Shoemaker were never removed from their position as trustees of the Trust. They asserted that, pursuant to the trust agreement, a trustee may only be removed by a vote of the Corporation's board of directors. They asserted that Merrill Lynch and Shoemaker failed to put forth any document evidencing their removal as trustees in the manner authorized by the trust agreement. Plaintiffs did not comment on the documents submitted by Merrill Lynch and Shoemaker in support of their argument that the Perkinsons were the trustees of the Trust.
Despite their argument to the contrary, Plaintiffs failed to show that a genuine issue of material fact existed. The trust agreement relied upon by the Plaintiffs did not support their assertion that Merrill Lynch and Shoemaker were the trustees of the Trust. Because the trust agreement is ambiguous as to the identity of the trustees, the later documents executed by the Perkinsons as trustees clarified that they were, in fact, the trustees. Plaintiffs did not even attempt to address these later documents.
Merrill Lynch and Shoemaker met their Dresher burden by putting forth evidence that they did not owe a duty to Plaintiffs. The burden, therefore, shifted to Plaintiffs to put forth evidence showing that a question of material fact existed as to whether Merrill Lynch and Shoemaker owed a duty to them. Plaintiffs failed to put forth any evidence to show that Merrill Lynch and Shoemaker owed a duty to them. Consequently, Plaintiffs failed to meet their Dresher burden. Therefore, the trial court's grant of summary judgment in favor of Merrill Lynch and Shoemaker was appropriate. Plaintiffs' first assignment of error is overruled.
 B. The Trial Court erred in granting partial summary judgment to[defendant] Patricia Vance, Esq.
In their second assignment of error, Plaintiffs have asserted that the trial court erred in granting summary judgment in favor of Vance. This Court will not address this assignment of error.
Plaintiffs alleged that Vance was their legal counsel and, in that capacity, set up and established their retirement plans in a manner that was impermissible under the Internal Revenue Code. Plaintiffs also contended that Vance failed to file tax-reporting forms and/or failed to inform Plaintiffs of the obligation to file those forms. Further, Plaintiffs alleged that Vance failed to amend Plaintiffs' plans in accordance with the Internal Revenue Code and/or failed to inform Plaintiffs of the obligation to amend the plan in accordance with the Internal Revenue Code. Finally, Plaintiffs alleged that Vance rendered legal advice relative to the establishment of the plans that was contrary to accepted standards of practice.
Vance moved the trial court for summary judgment on the grounds that the Perkinsons waived their only count against her. She asserted that by entering into a voluntary settlement with the Internal Revenue Service they waived their malpractice claim as a matter of law. She also asserted that her liability terminated when the tax laws changed, requiring the retirement plans to be amended, because her representation of the Perkinsons had been terminated. The trial court determined that Plaintiffs did not waive their malpractice claim against Vance; however, she could not be held liable for any of Plaintiffs claims that arose after the tax law that governed the pension instruments she drafted had changed. Accordingly, the trial court granted her partial summary judgment on Plaintiffs' malpractice claim.
In response to Plaintiffs' assignment of error, Vance has asserted that the trial court's grant of partial summary judgment in her favor is not a final appealable order. If a judgment or order rendered by a trial court is not final and appealable, this court does not have jurisdiction to hear the appeal. See R.C.2505.03(A). Plaintiffs have contended that the trial court's designation of "no just reason for delay" pursuant to Civ.R. 54(B) gives this Court jurisdiction.
Civ.R. 54(B) provides, in pertinent part:
 When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay.
To be final and appealable, an order must meet the requirements of both R.C. 2505.02 and Civ.R. 54(B), if applicable. Chef ItalianoCorp. v. Kent State Univ. (1989), 44 Ohio St.3d 86, syllabus. "An order which fails to conclude an entire cause of action is nonfinal and nonappealable, despite the court's certification in Civ. R. 54(B) language." Norvell v. Cuyahoga Cty. Hosp. (1983),11 Ohio App.3d 70, 71.
 For an order to be final and appealable it must either (a) dispose of the whole case, i.e., resolve all claims between all parties, or (b) in a case involving multiple claims and multiple parties, dispose of at least one full claim by one party against another and contain an express certification pursuant to Civ.R. 54(B).
 Horner v. Toledo Hosp. (1993), 94 Ohio App.2d 282, 288, appeal dismissed as improvidently allowed (1994), 67 Ohio St.3d 1422. The Ohio Supreme Court has noted that "the mere incantation of the required language does not turn an otherwise non-final order into a final appealable order." Noble v. Colwell (1989), 44 Ohio St.3d 92,96.
Plaintiffs only asserted one claim against Vance, to wit: malpractice. The trial court's determination that Vance could not be liable after the tax laws changed does not determine a claim or a cause of action but only an issue. Accordingly, the trial court's ruling granting partial summary judgment was only a partial adjudication of the malpractice claim. Because the portion of the trial court's order that granted Vance partial summary judgment on the malpractice claim is not a final appealable order, this issue is not properly raised on appeal. Accordingly, this Court cannot address Plaintiffs' second assignment of error.
 III.
Plaintiffs' first assignment of error is overruled. This Court is not able to review Plaintiffs' second assignment of error. The judgment of the trial court granting summary judgment in favor of Merrill Lynch and Shoemaker is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellants.
Exceptions.
BETH WHITMORE FOR THE COURT SLABY, P.J., CARR, J. concur